STATE OF NEW JERSEY, DEPARTMENT OF LAW AND PUBLIC SAFETY, DIVISION OF GAMING ENFORCEMENT, PETITION-ER–RESPONDENT, v. BOARDWALK REGENCY CORPORA-TION, RESPONDENT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued May 31, 1988—Decided July 20, 1988.

Before Judges J.H. COLEMAN and O'BRIEN.

*Lloyd D. Levenson* argued the cause for appellant (*Cooper, Perskie, April, Niedelman & Wagenheim,* attorneys; *Gerard W. Quinn* on the brief).

*Katherine A. Smith,* Deputy Attorney General, argued the cause for respondent Division of Gaming Enforcement (*W. Cary Edwards,* Attorney General of New Jersey, attorney; *Anthony J. Parrillo,* Assistant Attorney General, of counsel; *Katherine A. Smith* on the brief).

*Ruth S. Morgenroth,* Assistant Counsel, argued the cause for New Jersey Casino Control Commission (*Robert J. Genatt,* General Counsel, attorney; *Ruth S. Morgenroth* of counsel and on the brief).

PER CURIAM.

The Boardwalk Regency Corporation, the operator of Caesars Boardwalk Regency Hotel/Casino (Caesars) appeals from a decision of the Casino Control Commission (Commission) finding it violated *N.J.S.A.* 5:12–119(b) by allowing two underage

persons to gamble. Civil penalties totalling $2,000 were assessed. We now affirm.

I

On August 8, 1986 the Division of Gaming Enforcement (Division) filed a civil complaint with the Commission alleging that on two occasions Caesars had violated *N.J.S.A.* 5:12–119(b) by allowing two underage persons to gamble in the licensed Casino.[1] The Commission filed the civil complaint pursuant to *N.J.S.A.* 5:12–76a and b(4). Caesars filed a Notice of Defense to the charges and requested a hearing. The Commission transferred the matter to the Office of Administrative Law (OAL) as a contested case pursuant to *N.J.S.A.* 5:12–107. The matter was heard by Administrative Law Judge Lillard E. Law on stipulated facts.

The following facts were stipulated:

MR. LEVENSON: [Attorney for Caesars] Your Honor, Boardwalk Regency Corporation will stipulate that if the detectives from the Division of Gaming Enforcement were here to testify that they would testify as follows: Detective Higgins would testify that at 11:45 p.m. on July 11th, 1986, Joseph Saltarelli, S–A–L–T–O–R–E–L–L–I,—...

MR. LEVENSON: Sorry. Yes.—19 years old was seen by Detective Higgins playing a 25–cent slot machine in Slot Zone B. Further, that Mr. Saltarelli [sic] told Detective Higgins that he, Saltarelli, [sic] gained entrance to the casino after the show, [David Copperfield Magician Show] through the escalator entrance. Regarding Paul Brennan—

JUDGE LAW: One moment, please.

MR. LEVENSON: Sorry.

JUDGE LAW: Paul J. Brennan?

MR. LEVENSON: Yes, sir.

JUDGE LAW: B–R–E–N–N–A–N.

MR. LEVENSON: The testimony would be that at 1:15 a.m. on July 12th, 1986, Mr. Brennan, 19 years of age, was at the gift shop area, which is outside and told the detective—

---

[1]The civil complaint filed against Caesars states that the two underage persons were arrested and charged with being disorderly persons for underage gambling and for being an underage person in a casino contrary to *N.J.S.A.* 5:12–119a. We have not been advised of the outcome of those charges.

JUDGE LAW: Conversed with Higgins?

MR. LEVENSON: No. Detective Wurch, W–U–R–C–H.

JUDGE LAW: Yes.

MR. LEVENSON: And told Detective Wurch that he, Brennan, had been playing blackjack.

To mitigate any penalty which might be imposed, the attorneys for the parties also stipulated additional facts:

MR. LEVENSON: If people employed by Caesars—or by Boardwalk Regency Corporation—which if I may call it Caesars, that's what I'm used to calling it—if they were here to testify, they would testify as follows: that this is the first complaint ever filed against Caesars for an alleged violation of the statute.

Next, that there are signs posted indicating that you must be 21 years of age in order to enter the casino.

Next, at least one, and often two, security officers are posted at each entrance to the casino. At least nine roving slot—I'm sorry—nine roving security officers or supervisors are on the casino floor at all times in order to identify underaged individuals and escort them out.

Next, security officers are instructed and then reminded continuously that keeping persons under 21 out of the casino is their top priority and that failure to take appropriate action will cost them their jobs.

On July 11th, the show at Caesars was the David Copperfield show—which for anyone who is reading the record and is not familiar, is a magician/illusionist—and that that particular show draws a larger than usual concentration of younger people to the hotel. That Caesars reacts to that circumstance; that is, a show such as David Copperfield, by placing additional security officers and their supervisors at entry areas when the show lets out, in order to observe persons entering the casino. That security officers work eight-hour shifts and are posted at entrances for no longer than two-hour periods, then are relieved for two hours and then may return to that post for another two hours. That the theory behind—

JUDGE LAW: They are relieved for two hours?

MR. LEVENSON: Right. That the theory behind that is to keep someone fresh at the entrances. The next would be, although 28 security officers are required by the Casino Control Commission, in July of 1986, Caesars had between 35 and 40 security officers on duty because of the crowds frequenting the casino during the summer months. The security officers are instructed that anyone who potentially appears under 21 is to be asked for identification, and that if the security officers are unsure, they are to presume the person is under 21 and check for identification. Approximately 20 to 40 persons are checked for identification on any given two-hour assignment during summer evenings, and that approximately one-half of those are prohibited entry due to the lack of proper identification. If they are prohibited from entering or escorted off the casino floor, due to failure to provide satisfactory identification, their name and physical description is broadcast over the internal radio system so that all security officers and supervisors are notified.

JUDGE LAW: Broadcast over what, please?

MR. LEVENSON: The internal radio system, walkie-talkies. Regarding proper identification or what the security officers are instructed to accept or not accept as proper identification; a driver's license with a state seal or an ABC card with a photo must be produced. In addition to either one of those, there must be one additional form of identification, preferably with a photo. Security guards are instructed not to accept things such as birth certificates, baptismal certificates.

Lastly, that casino employees on the casino floor, including cocktail waitresses, are also instructed regularly to watch for underage people and bring suspected cases to the attention of security for further investigation.

ALJ Law rendered his Initial Decision on August 17, 1987 finding Caesars violated *N.J.S.A.* 5:12–119(b). He stated:

the instant matter is proceeding administratively, civilly, outside of the criminal forum *sans* any criminal sanctions....

\*      \*      \*      \*      \*      \*      \*      \*

... Although the Legislature constituted the violation of the statute as a disorderly persons offense, that alone does not mandate that the violation be prosecuted criminally; nor does it preclude the Division from proceeding in the administrative forum. *N.J.S.A.* 5:12–107....

\*      \*      \*      \*      \*      \*      \*      \*

... I conclude that the criminal elements of proof are not necessary and, therefore, inappropriate in these proceedings. I find and conclude, therefore, that the standard of proof, by the preponderance of the credible evidence, has clearly been met by the Division and that Caesars is guilty of violating *N.J.S.A.* 5:12–119b.

The ALJ considered the mitigating facts in view of the standards contained in *N.J.S.A.* 5:12–130 and imposed a $1,000 penalty for each of two violations. In addition, he ordered Caesars to "commence training programs and issue necessary instructions to security and non-security personnel concerning the necessity of careful observation and identification of underage persons."

In its final order dated December 16, 1987, the Commission adopted the Initial Decision of the ALJ except that it modified the date on which the penalties were to be paid. Caesars has appealed from that final order, contending:

1. *N.J.S.A.* 5:12–119b IS A PENAL STATUTE, AND PROCEEDINGS UNDER IT ARE CRIMINAL OR QUASI-CRIMINAL IN NATURE. ACCORDINGLY, THE STATUTE MUST BE STRICTLY CONSTRUED.

2. IT IS AN ESSENTIAL ELEMENT TO BE PROVED FOR A CONVICTION UNDER *N.J.S.A.* 5:12–119b THAT THE RESPONDENT [SIC] ACTED KNOWINGLY. AS THE DIVISION OF GAMING ENFORCEMENT FAILED TO COME FORWARD WITH ANY EVIDENCE WHATSOEVER OF A KNOWING VIOLATION OF THIS STATUTE, THE COMPLAINT SHOULD HAVE BEEN DISMISSED.

## II

The statute, *N.J.S.A.* 5:12–119, which Caesars was found to have violated, reads as follows:

a. No person under the age at which a person is authorized to purchase and consume alcoholic beverages, other than a person licensed under the provisions of this act in the regular course of his licensed activities, shall enter a licensed casino except by way of passage to another room.

b. Any licensee or employee of a casino who *allows* a person under the age at which a person is authorized to purchase and consume alcoholic beverages *to remain* in a casino is a disorderly person; except that the establishment of *all* of the following facts by a licensee or employee allowing any such underage person to remain shall constitute a defense to any prosecution therefor:

(1) That the underage person falsely represented in writing that he or she was at or over the age at which a person is authorized to purchase and consume alcoholic beverages;

(2) That the appearance of the underage person was such that an ordinary prudent person would believe him or her to be at or over the age at which a person is authorized to purchase and consume alcoholic beverages; and

(3) That the admission was made in good faith, relying upon such written representation and appearance, and in the reasonable belief that the underage person was actually at or over the age at which a person is authorized to purchase and consume alcoholic beverages. [emphasis added].

█ Caesars argues that the statute is penal in nature and based on the stipulated facts the Commission failed to establish the necessary mental culpability required to find a violation of a penal statute. This argument is based on the language in *N.J.S.A.* 5:12–119b which permits Caesars as a casino licensee to be adjudicated a disorderly person if it *"allows"* an underage person *"to remain"* in a casino. Caesars contends the statute requires the casino (1) to have knowledge of the presence of an underage person in the casino and (2) to sanction either directly or indirectly the presence of the underage person in the casino.

We, of course, are not bound by the Commission's determination of a strictly legal issue such as that involved here. *May-*

*flower Securities v. Bureau of Securities,* 64 *N.J.* 85, 93 (1973). Nor are we permitted to upset the final decision of an agency unless the decision was arbitrary, capricious or unreasonable. *Campbell v. Dept. of Civil Service,* 39 *N.J.* 556, 562 (1963). But we are permitted to accord substantial deference to an interpretation of a statute by the agency responsible for enforcing it. *Petition of Adamar of New Jersey,* 222 *N.J.Super.* 464, 469–470 (App.Div.1988). Based on our careful study of the record and controlling legal principles, we find the arguments of Caesars unpersuasive.

First, Caesars was not prosecuted as a disorderly person for either a criminal or quasi-criminal violation. As the ALJ noted correctly, Caesars was charged administratively under a civil complaint before the Commission in which only civil penalties were sought and obtained. Only the remedial aspect—not the criminal—of *N.J.S.A.* 5:12–119b is implicated here. Civil suits for penalties "are neither criminal nor quasi-criminal in nature." *Sawran v. Lennon,* 19 *N.J.* 606, 612 (1955). *See* also *In re Garay,* 89 *N.J.* 104, 111–113 (1982). Hence, the rule of strict construction of a penal statute in a criminal or quasi-criminal prosecution is inapplicable. *See State v. Meinken,* 10 *N.J.* 348, 352–353 (1952). The statute in this case was used for regulatory and remedial purposes and must therefore be construed with such purposes in mind.

■ Second, for regulatory purposes the statute imposes strict liability. *N.J.S.A.* 5:12–119a states no underage person, except one licensed under the Casino Control Act while performing his licensed activities, shall *enter* a casino except when passing to another room. This statute is part of a regulatory scheme intended to strictly control casino gambling. *N.J.S.A.* 5:12–1b(6) and (13) state:

(6) An integral and essential element of the regulation and control of such casino facilities by the State rests in the public confidence and trust in the credibility and integrity of the regulatory process and of casino operations. To further such public confidence and trust, the regulatory provisions of this act are *designed to extend strict State regulation to all* persons, locations,

practices and associations related to the operation of licensed casino enterprises and all related service industries as herein provided.

(13) It is in the public interest that the institution of licensed casino establishments in New Jersey *be strictly regulated* and controlled.... [Emphasis added].

In addition, *N.J.S.A.* 5:12–130g provides:

It shall be no defense to disciplinary action before the commission that an applicant, licensee, registrant, intermediary company, or holding company inadvertently, unintentionally, or unknowingly violated a provision of this act. Such factors shall only go to the degree of the penalty to be imposed by the commission, and not to a finding of a violation itself.

When *N.J.S.A.* 5:12–119 is read in conjunction with other pertinent provisions of the Casino Control Act, the legislative intent to create strict liability in *N.J.S.A.* 5:12–119 becomes plain.

It therefore follows that the legislature did not intend to require a showing of culpable knowledge on the part of a casino before it could be found to have violated *N.J.S.A.* 5:12–119b.[2] That subsection creates liability on the part of the casino if it "allows" an underage person "to remain" in the casino unless one of the three defenses is established. Neither defense has been urged in this case. The words "allows to remain" must be given their regular and ordinary meaning. "Allow" is defined to mean "to permit by neglecting to restrain or prevent." "Remain" is defined as meaning "to stay in the same place or with the same person or group." "Webster's Third New International Dictionary of the English Language Unabridged" (G. & C. Merriam Company, 1969).

Our interpretation of *N.J.S.A.* 5:12–119b as not requiring a culpable state of mind for these administrative proceedings is consistent with our holding in another context. In *Alcoholic Bev. Cont. v. H. & H. Wine*, 216 *N.J.Super.* 532, 536–537 (App.Div.1987) we held that a licensee was strictly liable for not preventing the sale of alcohol to an underage person. The

---

[2]We note that we have previously concluded that criminal intent is not necessary to support a finding of guilt in regulatory or public welfare criminal statutes. *State v. Kiejdan*, 181 *N.J.Super.* 254, 257–258 (App.Div.1981); *State v. Resorts Internat. Hotel, Inc.*, 173 *N.J.Super.* 290, 299–300 (App.Div.1980), certif. den. 84 *N.J.* 466 (1980).

relevant statute involved was *N.J.S.A.* 33:1–77. It provides "*[a]nyone* who *sells* any alcoholic beverage to a person under the legal age for purchasing alcoholic beverages is a disorderly person...." [Emphasis added]. *N.J.A.C.* 13:2–23.1(a), which was promulgated pursuant to the statute, provides "[n]o licensee shall *sell, serve or deliver or allow, permit or suffer* the sale, service or delivery of any alcoholic beverage, directly or indirectly, to any person under the legal age to purchase or consume alcoholic beverages, or *allow, permit* or *suffer* the consumption of any alcoholic beverage by any such person in or upon the licensed premises." [Emphasis added, footnote omitted]. In that case, we recognized that the words "allow" or "suffer" in the regulation "imposes responsibility upon a licensee, regardless of knowledge, where there is a failure to prevent the prohibited conduct...." *Id.* at 536, quoting from *Essex Holding Corp. v. Hock,* 136 *N.J.L.* 28, 31 (Sup.Ct.1947). The same reasoning is applicable to the present case.

We therefore fully agree with the Commission that Caesars allowed the two underage persons to remain in the casino in violation of *N.J.S.A.* 5:12–119b. The final decision of the Commission is affirmed.