181 N.J. Super. 254 (1981)
437 A.2d 324
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
PAUL KIEJDAN, PRESIDENT, KIEJDAN & TROCKI, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 22, 1981.
Decided October 13, 1981.
*256 Before Judges MATTHEWS, PRESSLER and PETRELLA.
Steven D. Scherzer argued the cause for the appellant (Valore, McAllister, Aron, Westmoreland & Vesper, attorneys).
Steven C. Harris, Prosecutor, Township of Egg Harbor, argued the cause for the respondent (Harris & Guggenheim, attorneys).
The opinion of the court was delivered by PRESSLER, J.A.D.
Following a trial de novo in the Law Division, defendant, the owner of an apartment complex in Egg Harbor Township, was convicted of two violations of a Township Board of Health ordinance which, pursuant to N.J.S.A. 26:3-69.1 et seq., adopted by reference the Public Health and Nuisance Code of New *257 Jersey. The specific provision thereof which defendant was found guilty of violating makes it unlawful for the owner of multi-unit residential property to fail to provide heat to tenants to the degree and at the times therein prescribed. Defendant was fined $75 for each violation and appeals.
The State's proofs support the conclusion, beyond a reasonable doubt, that on October 30 and 31, 1979, the dates charged, insufficient heat, if any at all, was furnished to at least two tenants. The primary thrust of the defense was not to dispute the fact of the heating failure but rather to attempt to excuse it on the ground that the building's heating system had been continuously and repeatedly damaged by vandalism during the two or three weeks prior to the late October dates here charged. Defendant claims that during that period he was engaged in a continuing effort to make repairs to the heating system, only to have the results of those efforts subjected to further and recurring acts of vandalism.
The question thus raised is whether the facts upon which the defense was predicated would, if proved, constitute a viable legal defense to the charges. It was the view of both the Law Division and the municipal court, in which we concur, that the ordinance in question imposes strict liability for noncompliance and hence that its penal consequences may be imposed irrespective of fault or intent in the traditional mens rea sense. We, accordingly, find no merit in defendant's claim that a "culpable mental state" is a prerequisite to conviction of an ordinance violation.
To begin with, it has long since been settled, particularly in respect of minor offenses, that the "Legislature may make the doing of ... [a] prohibited act criminal or penal, regardless of a corrupt or criminal purpose or even knowledge of the illegal character of the act; and in such case only the doing of the proscribed act need be shown." State v. Labato, 7 N.J. 137, 149 (1951). While it is recognized that this strict liability approach to penal sanctions should be "sharply limited," nevertheless it is *258 also clear that "a wide variety of social and economic problems has impelled the adoption in this century of numerous `strict liability' penal statutes." State v. Chiarello, 69 N.J. Super. 479, 494 (App.Div. 1961), certif. den. 36 N.J. 301 (1962).
Without attempting to define the outer limits of constitutional or community acceptability of the strict liability technique, we are satisfied that that technique continues to be an unexceptionable and appropriate legislative option where employed to implement a regulatory scheme designed to deal with a serious social problem. See Dare v. State, 159 N.J. Super. 533, 538 (App.Div. 1978), and cases therein collected. And see State v. Kinsley, 103 N.J. Super. 190, 193 (Cty.Ct. 1968), aff'd o.b. 105 N.J. Super. 347 (App.Div. 1969). The provision here in question prescribing the landlord's obligation to furnish heat is, moreover, part of just such a regulatory scheme intended to protect and advance the public health and safety. Its imposition of penal consequences for a failure of compliance, whether or not intended, is both a clearly implied part of that scheme and a necessary tool for the effectuation of its public purpose. See, so holding in respect of similar ordinances, State v. Elmwood Terrace, Inc., 85 N.J. Super. 240 (App.Div. 1964); Newark v. Charlton Holding Co., 9 N.J. Super. 433 (Cty.Ct. 1950).
We point out that typically, although not necessarily so, statutory provisions imposing penalties for violation of regulatory schemes are in the nature of civil penalties enforceable by way of summary proceedings pursuant to the Penalty Enforcement Law, N.J.S.A. 2A:58-1 et seq., implemented by R. 4:70. And see Sawran v. Lennon, 19 N.J. 606 (1955); Verona v. Shalit, 96 N.J. Super. 20 (App.Div. 1967); Conservation and Ec. Dev. Dept. v. Scipio, 88 N.J. Super. 315 (App.Div. 1965), certif. den. 45 N.J. 598 (1965). It further appears that just such a civil penalty was intended by the ordinance here. As we have already noted, the ordinance was adopted by the Township Board of Health pursuant to N.J.S.A. 26:3-69.1 et seq. The penalty upon conviction of ordinance violation was therein fixed at not less than $2 *259 nor more than $100. The amount of that penalty conformed precisely with that prescribed by the pre-1970 version of N.J.S.A. 26:3-70. We thus have no doubt that the statutory penalty provisions of N.J.S.A. 26:3-70 to 82 were intended to apply, and as a matter of law were required to apply, to enforcement of the ordinance. N.J.S.A. 26:3-72, moreover, expressly requires penalty proceedings to be prosecuted in accordance with N.J.S.A. 2A:58-1 et seq., and confers jurisdiction upon the municipal court to entertain such proceedings. But whether the proceedings here were actually civil in nature or, as the parties hereto apparently believed, quasi-criminal in nature, is of little consequence to the ultimate outcome. Cf. Verona v. Shalit, supra. The point is that the strict liability intended by the ordinance is enforceable in either event.
Defendant seeks to overcome the weight of settled law by arguing that the New Jersey Code of Criminal Justice, N.J.S.A. 2C:1-1, effective September 1979, has a vitiating effect on pre-existing strict liability penal provisions. He relies for this thesis on N.J.S.A. 2C:2-2(c)(3), entitled "Construction of statutes not stating culpability requirement" and providing that
Although no culpable mental state is expressly designated in a statute defining an offense, a culpable mental state may nevertheless be required for the commission of such offense, or with respect to some or all of the material elements thereof if the proscribed conduct necessarily involves such culpable mental state. A statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, should be construed as defining a crime with mental culpability. This provision applies to offenses defined both within and outside of this code.
We are satisfied that this section of the Code does not apply here irrespective of the definitional scope of the term "offense," see N.J.S.A. 2C:1-14(k), and irrespective of whether we are dealing here with a civil penalty or a quasi-criminal proceeding. In short, the above-cited Code provision does not prohibit penal strict liability legislation but rather recognizes the legislative authority to enact such legislation, provided only its intent to do so is clearly stated. We have no doubt as to the clarity of the legislative intent here.
*260 Finally, defendant contends, in what is apparently a substantive due process argument, that fundamental fairness should preclude penalty enforcement for events beyond the defendant's control. We do not address that contention since we are persuaded, as were the trial courts here, that the defense to these proceedings did not rely on such events. The argument might have appeal here if heat could not be supplied because of some natural catastrophe such as earthquake or fire or, indeed, because of some unanticipatable intervention of human agency. If the violations here were based on heat interruption resulting from an initial act of vandalism, promptly counteracted, we might then be dealing with causes which might invoke substantive due process concerns. But such is not the case here. Defendant was not charged with ordinance violation until several weeks after the first act of vandalism. It is clear that as soon as that first act occurred, even if that first act were completely and reasonably unanticipated, he was placed on notice of his responsibility to take steps to prevent a recurrence. Certainly effective steps could have been taken and the fact of recurrence demonstrates that they were not taken.
We are convinced that the essence of strict liability in the penal context before us is to warn those subject to sanction that a high, if not extraordinary, degree of care in the conduct and management of their regulated business and affairs is required. If that degree of care is warranted as a matter of the public interest, and if it remains ultimately within one's power and capacity to effect compliance with imposed regulation, strict liability does not offend any traditional substantive due process notion.
Defendant's final attack on the convictions rests upon an evidence question. Temperatures in the two apartments were measured by a county official using a heat register, a device whose scientific reliability was, defendant asserts, unproved. It appears that the register was merely a combination of ordinary measuring devices and hence that its measurements would be *261 admissible. See State v. Dantonio, 18 N.J. 570, 580-581 (1955). Nevertheless, the Law Division, on the trial de novo placed no reliance on that evidence and the record contains other ample credible evidence to support the conclusion that the temperature was below that required. Defendant was, accordingly, not prejudiced by the register evidence even if inadmissible.
Affirmed.