STATE OF NEW JERSEY, PLAINTIFF-APPELLANT AND CROSS-
RESPONDENT, v. THOMAS F. ROVITO,
DEFENDANT-RESPONDENT AND CROSS-APPELLANT.

Argued January 8, 1985—Decided July 3, 1985.

*Boris Moczula,* Deputy Attorney General, argued the cause for appellant and cross-respondent (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney).

*Patricia K. Costello* argued the cause for respondent and cross-appellant (*McAlevy & Costello,* attorneys).

The opinion of the Court was delivered by

POLLOCK, J.

The primary issue on this appeal is whether an offer or transfer of a firearm that is made "knowingly," but not "pur-

posely," as those terms are defined in *N.J.S.A.* 2C:2–2b, constitutes an unlawful disposition of the firearm under *N.J.S.A.* 2C:39–9d. The trial court charged the jury that a knowing disposition was sufficient, and the jury convicted the defendant of a violation of *N.J.S.A.* 2C:39–9d. In an unreported decision, the Appellate Division determined that the disposition must be intentional to be unlawful. Accordingly, the Appellate Division reversed the conviction and remanded the matter for retrial. We conclude that a knowing transfer is sufficient to constitute an unlawful disposition of a firearm. Therefore, we reverse the judgment of the Appellate Division and reinstate the conviction.

I

Defendant, Thomas Rovito, was a police officer for the City of Weehawken. On March 11, 1981, he attended a meeting of his fraternity at his alma mater, Bloomfield College. After the meeting, Rovito and five of his fraternity brothers, including Jose Gonzalez, went to another brother's room to drink beer and watch television. While there, Rovito removed his service revolver, placed it on the floor, and asked if anyone wanted to play Russian Roulette. In response, Gonzalez picked up the gun, pulled the trigger, and killed himself.

Rovito was indicted for manslaughter, *N.J.S.A.* 2C:11–4b, and for unlawful disposition of a weapon, *N.J.S.A.* 2C:39–9d. The jury acquitted the defendant of manslaughter, but convicted him on the weapons charge. The trial court sentenced him to one-year probation and imposed a $500 fine and a $25 Violent Crimes Compensation Board penalty.

With regard to the unlawful disposition of the weapon, the trial court instructed the jury that it must find that the defendant "knowingly" disposed of his firearm. The court defined "knowingly" in accordance with *N.J.S.A.* 2C:2–2b(2):

A person acts knowingly with respect to the nature of his conduct or the attendant circumstances if he is aware that his conduct is of that nature, or that such circumstances exist, or he is aware of a high probability of their existence. A person acts knowingly with respect to a result of his conduct if he is aware

that it is practically certain that his conduct will cause such a result. 'Knowing,' 'with knowledge' or equivalent terms have the same meaning.

The Appellate Division concluded that the trial court erred in not instructing the jury that the defendant must have intended to dispose of the weapon to be guilty of violating *N.J.S.A.* 2C:39–9d. It reasoned that

[t]he jury should have been specifically instructed that neither jesting, mistake nor inadvertence would be sufficient but rather that they must specifically find beyond a reasonable doubt that it was the intent of the defendant to permit the transfer of possession of the weapon and that no degree of recklessness or inadvertence will suffice.

Accordingly, the court reversed the defendant's conviction and remanded the matter for a new trial. Nonetheless, the Appellate Division rejected defendant's contention that *N.J.S.A.* 2C:39–9d applies to commercial dealers in firearms, but not to private individuals. The court also rejected defendant's contentions of trial error.

The State sought certification on the reversal of the conviction. Defendant cross-petitioned on the question whether *N.J. S.A.* 2C:39–9d extends to private individuals and on the allegations of trial error. We granted both petitions. 97 *N.J.* 635 (1984).

## II

Our analysis begins with *N.J.S.A.* 2C:39–9d, which provides, in relevant part:

Any person who manufactures, causes to be manufactured, transports, ships, sells or disposes of any weapon including gravity knives, switchblade knives, daggers, dirks, stilettos, billies, blackjacks, metal knuckles, sandclubs, slingshots, cesti or similar leather bands studded with metal filings, or in the case of firearms if he is not licensed or registered to do so as provided in chapter 58, is guilty of a crime of the fourth degree.

The phrase "to dispose of" is defined to mean "to give, give away, lease, loan, keep for sale, offer, offer for sale, sell, transfer, or otherwise transfer possession." *N.J.S.A.* 2C:39–1d. The Code, however, does not define the terms included in *N.J.S.A.* 2C:39–1 such as "offer," "transfer," or "otherwise transfer possession." Nonetheless, it is apparent that the

Legislature intended to give wide scope to the phrase "dispose of." Common usage and dictionary definitions support the conclusion that the defendant offered, transferred, or otherwise transferred possession of the gun to Gonzalez. For example, "offer" means "[t]o bring to or before; to present for acceptance or rejection; to hold out or proffer; to make a proposal to; to exhibit something that may be taken or received or not * * *," *Black's Law Dictionary* 975 (5th ed.1979); "transfer" means "[t]o convey or remove from one place, person, etc., to another; pass or hand over from one to another; specifically, to change over the possession or control of * * *. To sell or give." *Id.* at 1342. We have no doubt that Rovito gave, offered, or transferred possession of his gun to Gonzalez.

The critical question is whether the gift, offer, or transfer must have been "purposeful" or merely "knowing." A person acts "knowingly" if he is aware of the nature of his conduct or of the existence of circumstances attendant upon that conduct. *N.J.S.A.* 2C:2–2b(2). With respect to the offense of the unlawful disposition of a weapon, for example, it would be sufficient that the defendant knew he was offering his gun to his fraternity brothers. *See* II Final Report of the New Jersey Criminal Law Revision Commission 40–41 (1971). The trial court determined a "knowing" disposition was sufficient and so charged the jury. Pursuant to these instructions, the jury found Rovito guilty of unlawfully disposing of his gun.

In reversing, the Appellate Division found that the defendant should not have been convicted on "something less than an intent * * * to give * * * offer or transfer possession of the gun to the decedent * * *." That finding is more akin to a requirement that a defendant is not guilty under *N.J.S.A.* 2C:39–9d unless he or she acted "purposely," a term that the statute defines:

(1) *Purposely.* A person acts purposely with respect to the nature of his conduct or a result thereof if it is his conscious object to engage in conduct of that nature or to cause such a result. A person acts purposely with respect to attendant circumstances if he is aware of the existence of such circumstances

or he believes or hopes that they exist. 'With purpose,' 'designed,' 'with design' or equivalent terms have the same meaning. [*N.J.S.A.* 2C:2–2b(1).]

By elevating the culpability requirement in *N.J.S.A.* 2C:39–9d to "intentionally," the Appellate Division applied a standard that more closely corresponds to the Code's definition of "purposely."

██ The difference between the trial court's ruling and the Appellate Division's decision arises from the absence of a specified requirement of culpability in *N.J.S.A.* 2C:39–9d. In the absence of such a requirement, the question becomes what is the appropriate construction of the statute. Another code provision, *N.J.S.A.* 2C:2–2c(3), answers the question by declaring that "[a] statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, should be construed as defining a crime with the culpability defined in paragraph b.(2) of this section," a reference to *N.J.S.A.* 2C:2–2b(2), which requires that a defendant act "knowingly." Thus, the Code mandates that a person will be culpable under *N.J.S.A.* 2C:39–9d if he or she acts "knowingly."

### III

██ ██ Although we reject the Appellate Division's requirement of purposeful conduct, we agree with its conclusion that *N.J.S.A.* 2C:39–9d applies to private individuals as well as to commercial dealers in guns. Defendant's countervailing argument is based on a reference in *N.J.S.A.* 2C:39–9d that "[a]ny person who * * * disposes of any weapon * * * or in the case of firearms if he is not licensed or registered to do so as provided in chapter 58, is guilty of a crime of the fourth degree * * *." Nothing in the words or history of the legislation suggests the statute is to be limited to commercial transactions. Furthermore, the overriding philosophy of the Legislature and of the judiciary is to limit the use of guns. *E.g., State v. Hatch,* 64 *N.J.* 179, 184–86 (1973) (applying New Jersey Gun Control Law to a Massachusetts resident driving through New Jersey on his way to Pennsylvania); *State v. Wright,* 155

*N.J.Super.* 549, 553 (App.Div.1978) (court, relying on the strong legislative policy in this state with respect to gun control, refused to merge the defendant's conviction for possession of a firearm by a convicted felon with that for carrying a pistol without a permit). Moreover, exemptions from gun statutes should be strictly construed to better effectuate the policy of gun control. *See Service Armament Co. v. Hyland,* 70 *N.J.* 550, 559 (1976) (since exception to the gun control law must be narrowly construed, the Court found that "replicas" of antique guns were not "antique firearms" exempted from the statute); *State v. Marques,* 140 *N.J.Super.* 363, 366 (App.Div.1976) (holding inapplicable the statutory exception for guns kept in a dwelling house to guns kept in a college dormitory); *State v. Valentine,* 124 *N.J.Super.* 425, 426–27 (App.Div.1973) (statutory exception permitting one to carry a firearm at his or her place of business inapplicable to the manager of a bar owned by another). We have no doubt that the Legislature intended that *N.J.S.A.* 2C:39–9d should apply to private individuals as well as to commercial dealers.

■ We agree also with the Appellate Division's conclusion that defendant's allegations of trial error are meritless. Those allegations include two evidentiary points. First, defendant claims that the trial court erred in admitting testimony that he had displayed his gun on three prior occasions. Defendant also contends that the trial court erred in allowing testimony concerning police department training in the use of firearms. Both evidentiary points relate to whether defendant acted recklessly, an element of the crime of manslaughter. *N.J.S.A.* 2C:11–4. Defendant, however, was acquitted of the manslaughter charge. We recognize that the erroneous admission of evidence on one charge could conceivably be prejudicial on another charge. Under the circumstances of this case, however, we find that the asserted errors in admitting the evidence are, at most, harmless. *R.* 2:10–2.

■ Defendant's final allegation of trial error also relates to the manslaughter charge. The alleged error arises from the

trial court's decision after the completion of summations to charge the jury on the provisions of *N.J.S.A.* 2C:2–3, which deals with the causal relationship between conduct and result. After deciding to charge the jury on this issue, the court granted each counsel an additional ten minutes to present supplementary summations and gave defense counsel the choice of proceeding first or second. The defendant claims that the procedures violated Rule 1:8–7, which requires a trial court to "rule on the requests prior to closing arguments to the jury." Although the better practice is for the court to resolve all questions about the proposed charge before summations, a trial is not a mere mechanical exercise. The dynamics of trial practice occasionally may require a judge to follow the spirit, if not the letter, of the Rules of Court. Here, the trial court's conduct was consistent with the purpose of Rule 1:8–7, which is to permit counsel to conform their summations to the charge.

The judgment of the Appellate Division is reversed, and defendant's conviction of the unlawful disposal of a weapon under *N.J.S.A.* 2C:39–9d is reinstated.

*For reversal and reinstatement*—Chief Justice WILENTZ, Justices CLIFFORD, HANDLER, POLLOCK, O'HERN and GARIBALDI—6.

*For affirmance*—None.