603 A.2d 21

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
CHARLES SEWELL, DEFENDANT–RESPONDENT.

Argued October 8, 1991—Decided March 17, 1992.

*Nancy Peremes Barton,* Deputy Attorney General, argued the cause for appellant (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney).

*Al Glimis,* Assistant Deputy Public Defender, argued the cause for respondent (*Wilfredo Caraballo,* Public Defender, attorney).

The opinion of the Court was delivered by

HANDLER, J.

In this criminal appeal, the Court must determine the level of culpability necessary to convert theft into robbery. The crime of theft becomes robbery when the defendant "inflicts bodily injury or uses force upon another" in the course of committing a theft. The facts of this case do not indicate, nor did the trial court instruct the jury to consider defendant's culpability when

he inflicted injuries and used force during a collision with several persons in the course of a theft. On defendant's appeal from his convictions of robbery, the Appellate Division reversed those convictions and remanded the matter for a new trial. The court construed the robbery statute to require that defendant's infliction of bodily injury or use of force be undertaken intentionally. One member of the Appellate Division dissented from that standard of culpability, concluding that the injury/force aspect of robbery could be satisfied without intentional conduct by defendant. The State brings this appeal as of right, based on that partial dissent.

## I

The facts are not in dispute. On May 7, 1987, Matilda Albertelli was playing the slot machines at Atlantic City's Showboat Casino. She filled a small bucket with quarters and placed it between two slot machines, hanging her pocketbook to hide the bucket from view. As she played, she noticed someone moving her pocketbook. She turned to see defendant, Charles Sewell, take her bucket of coins and walk away with it. After shouting an alarm, Ms. Albertelli chased defendant and was joined in her pursuit by two security guards. In his flight, defendant collided with three women. Defendant first bumped into Mary Smith, causing the elderly woman to fall against a slot machine. As defendant reached the exit, casino patron Moe Werfel tripped defendant. Defendant fell, and security guard Curtis Brown grabbed him. As defendant struggled to break the guard's grasp, his arm struck Madelyn Frantzen. Defendant broke free and continued his flight. While running across the lobby, he ran into Mary Dillon. Three security guards eventually apprehended defendant.

Although no serious injuries resulted from those collisions, the evidence would support a finding that all three women suffered "bodily injury" as defined in *N.J.S.A.* 2C:11–1a ("physical pain, illness or any impairment of physical condition"). The

casino nurse treated Mary Smith's leg and back with a pain reliever and an ice pack, and her blood pressure remained elevated for a day. Madelyn Frantzen suffered a sore hip, which the nurse also treated with a pain reliever and ice. Mary Dillon suffered a sore chest for about a week, though she was unbruised.

Defendant was charged with four counts of second-degree robbery, *N.J.S.A.* 2C:15–1, one for each of the four people he allegedly injured in the course of committing a theft: Smith, Frantzen, Dillon and Brown, the security guard. The trial court charged the jury regarding the theft element of robbery, including the requirement that the taking be done purposely. With respect to the injury/force element, the court stated the following:

> In addition to proving beyond a reasonable doubt that the defendant was in the course of committing the theft, the State must also prove beyond a reasonable doubt that while in the course of committing that theft, the defendant inflicted bodily injury or used force upon another.

The jury found defendant guilty of three counts of second-degree robbery and one count of simple assault, the latter relating to Brown. The court sentenced defendant to an aggregate fourteen-year term, with an aggregate six-year parole disqualifier.

The Appellate Division panel affirmed the simple assault conviction but, as previously noted, reversed the three robbery convictions and remanded them for a new trial. The majority reasoned that the trial court had erroneously failed to instruct the jury regarding the culpability required for the inflicts-bodily-injury-or-uses-force element of robbery. It construed the statute to require that defendant's infliction of bodily injury or use of force be done knowingly or purposely, not merely recklessly. 242 *N.J.Super.* at 502–03, 577 *A.*2d 537. It also ruled that defendant could be convicted of only one robbery because there was only one theft. *Id.* at 505, 577 *A.*2d 537. The dissenting judge disagreed with the standard of culpability required by the majority. The dissent drew a parallel between

robbery and felony murder, and applied a theory of transferred culpability with respect to the injury/force element of robbery, concluding under that approach that the trial court should have charged the standards of recklessly and negligently as well as purposely and knowingly. *Id.* at 506–07, 577 *A.*2d 537.

## II

We address preliminarily two matters relating to the application of the robbery statute to the facts of this case. Defendant's collisions with the three women occurred while he was attempting to escape after having stolen Ms. Albertelli's bucket of quarters. Under the robbery statute, acts that implicate the injury/force element must occur "in the course of committing a theft." *N.J.S.A.* 2C:15–1a. The robbery statute specifies that "[a]n act shall be deemed to be included in the phrase 'in the course of committing a theft' if it occurs in an attempt to commit theft or in immediate flight after the attempt or commission." *Ibid.; see State v. Mirault,* 92 *N.J.* 492, 500–01, 457 *A.*2d 455 (1983). The trial court here correctly recognized in its charge to the jury that the physically-harmful acts of defendant had occurred in his flight following the theft, and could therefore satisfy the injury/force element of the robbery.

Additionally, each robbery is a separate crime, which entails a discrete theft from a single victim together with accompanying injury or force. *State v. Carlos,* 187 *N.J.Super.* 406, 455 *A.*2d 89 (App.Div.1982), *certif. denied,* 93 *N.J.* 297, 460 *A.*2d 693 (1983); *see also State v. Mirault, supra,* 92 *N.J.* at 497 n. 4, 457 *A.*2d 455 ("In *Carlos,* the presence of two threatened bystanders during theft from two other persons did not convert two thefts to four robberies."); *State v. Lawson,* 217 *N.J.Super.* 47, 51, 524 *A.*2d 1278 (App.Div.1987) ("A robbery conviction must be premised upon a separate theft."). Defendant, therefore, could be convicted of only one robbery because he had committed only one theft, namely, that entailed

in taking Ms. Albertelli's coins. The trial court nevertheless believed that defendant's infliction of physical harm on three separate persons in his attempt to escape constituted multiple robberies, notwithstanding the fact that there was only a single theft. The Appellate Division correctly reversed that ruling. 242 *N.J.Super.* at 505, 577 *A.2d* 537.

### III

The critical issue for the Court in this case is to determine the culpability that a defendant must have when he inflicts injury or uses force against another in the course of a theft in order to escalate theft into robbery. The question arises because the statute defining second-degree robbery, *N.J.S.A.* 2C:15–1a, does not specify the mental state that must be shown with respect to the injury or force that accompanies a theft. It states only that "[a] person is guilty of robbery if, in the course of committing a theft, he: (1) Inflicts bodily injury or uses force upon another...." *N.J.S.A.* 2C:15–1a(1).

The New Jersey Code of Criminal Justice provides a method for determining the relevant mental state with respect to statutes defining crimes or offenses that do not specify any applicable mental state. "[T]he absence of any express culpability requirement [in a criminal statute] brings into play the gap filler provision of *N.J.S.A.* 2C:2–2c(3)." *State v. Demarest*, 252 *N.J.Super.* 323, 334, 599 *A.2d* 937 (App.Div.1992).

> Although no culpable mental state is expressly designated in a statute defining an offense, a culpable mental state may nevertheless be required for the commission of such offense, or with respect to some or all of the material elements thereof, if the proscribed conduct necessarily involves such culpable mental state. A statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, should be construed as defining a crime with the culpability defined in paragraph b.(2) of this section. [*N.J.S.A.* 2C:2–2c(3).]

The gap-filler provision explicitly directs that under the Code strict criminal liability is not applicable to the commission of a crime unless the legislature clearly expresses its intention to do so. *Ibid.; State v. Michalek*, 207 *N.J.Super.* 340, 347–48, 504 *A.2d* 155 (Law Div.1985); *The New Jersey Penal Code, Vol. II:*

*Commentary of the New Jersey Criminal Law Revision Commission* (1971) (*Final Report*) at 46–47 (quoted in Cannel, *Criminal Code Annotated* § 2C:2–2c(3), Comment 9 at 83–84 (1992)) (Cannel). Where the intent to impose strict liability is not clearly indicated, a specific culpable mental state must be ascribed to the crime or its material elements if "no culpable mental state is expressly designated in [the] statute defining [the] offense." *N.J.S.A.* 2C:2–2c(3). That culpable mental state is the specific culpable mental state "necessarily involved" in the "proscribed conduct" or, "knowingly." *See State v. Rovito*, 99 *N.J.* 581, 586, 494 *A.*2d 309 (1985) (with respect to offense that has no "specified requirement of culpability," "knowingly" is the standard of culpability that is applied under the gap-filler provision of Code); *State v. Demarest, supra,* 252 *N.J.Super.* at 327, 599 *A.*2d 937. The culpability provisions of the Code further demonstrate that the "knowingly" level of culpability is lower than "purposely" but higher than "recklessly" or "negligently." *N.J.S.A.* 2C:2–2b(1)–(4).

Consequently, in ascertaining the requisite mental state for the crime of second-degree robbery, as the Appellate Division correctly ruled, 242 *N.J.Super.* at 502–03, 577 *A.*2d 537, the interpretative methodology called for by the gap-filler provision must be followed. That requires first a determination of whether the robbery statute clearly indicates a legislative intent to impose strict liability. Clearly it does not.

The dissent below believed that strict liability or near-strict liability was the requisite standard. The dissent noted the parallel construction of the robbery statute and the felony-murder statute, *N.J.S.A.* 2C:11–3a(3): both statutes hold criminals liable for causing harm while "in the course of" committing another offense and neither statute defines the requisite intent. 242 *N.J.Super.* at 506, 577 *A.*2d 537. It observed that for felony murder, "there is no specific culpability requirement for the homicide; the actor need only have met the culpability requirement of the underlying felony. That culpability is then 'transferred' to the homicide making it a felony-murder." *Ibid.*

(quoting Cannel, *supra*, cmt. 3, *N.J.S.A.* 2C:11–3a(3) (1990) at 242. Similarly, the dissent would "transfer" the culpability of theft to the injury/force element of robbery. Nevertheless, the dissent concludes that because the robbery statute, *N.J.S.A.* 2C:15–1a, employs "active" verbs in describing its injury/force element, *i.e.*, "inflicts" and "uses," culpability would minimally include recklessly and negligently as well as more culpable states of purposely and knowingly. 242 *N.J.Super.* at 506–07, 577 *A.*2d 537 (footnotes and citations omitted).

Even if we were prepared to apply the construct of transferred intent outside of the confines of the felony-murder rule, we cannot apply it to robbery. The Legislature did not clearly indicate an intent to impose strict liability with respect to the injury/force element of robbery or to impute culpability for that element of robbery by resort to the theory of transferred intent. *See, e.g., State v. Kiejdan*, 181 *N.J.Super.* 254, 259, 437 *A.*2d 324 (App.Div.1981) (gap-filler does not prohibit penal strict liability legislation but such enactments must clearly state legislative intent to do so). Hence, the gap-filler provision itself bars any imputation of a legislative purpose that would call for strict or near-strict liability with respect to the injury/force element of robbery.

The second inquiry required by the interpretive approach of the gap-filler provision is whether the statute defining the crime "expressly designates" a culpable mental state. If the statute does not "expressly designate" a culpable mental state, then the further inquiry is whether the "proscribed conduct necessarily involves" a specific culpable mental state. *N.J.S.A.* 2C:2–2c(3). *See State v. Demarest, supra,* 252 *N.J.Super.* at 327, 599 *A.*2d 937.

The robbery statute does not "expressly designate" a culpable mental state with respect to each of the material elements of theft and injury/force. It does, however, define robbery as involving the commission of a "theft." *N.J.S.A.* 2C:15–1a. There is a specific culpable mental state "necessarily involved"

in the "proscribed conduct" of theft. A theft is committed when the actor "unlawfully takes, or exercises unlawful control over, movable property of another with *purpose* to deprive him thereof." *N.J.S.A.* 2C:20–3a (emphasis added). Therefore, theft, as a component of robbery, requires the culpable mental state of "purposely" under the gap-filler provision. *N.J.S.A.* 2C:2–2c(3).

The "proscribed conduct" constituting the injury/force element of robbery, however, does not otherwise disclose the culpable mental state "necessarily involved" therein. The gap-filler provision must be followed further to determine the culpable mental state applicable to satisfy that component of robbery.

In *State v. Rovito, supra,* the Court, following the methodology of the gap-filler provision, determined that an offense involving the unlawful disposition of a firearm required "knowing" conduct by the defendant. The Court explained that the need to impute that mental intent arose

> from the absence of a specified requirement of culpability in *N.J.S.A.* 2C:39–9d. In the absence of such a requirement, the question becomes what is the appropriate construction of the statute. Another code provision, *N.J.S.A.* 2C:2–2c(3), answers the question by declaring that "[a] statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, should be construed as defining a crime with the culpability defined in paragraph b.(2) of this section," a reference to *N.J.S.A.* 2C:2–2b(2), which requires that a defendant act "knowingly." Thus, the Code mandates that a person will be culpable under *N.J.S.A.* 2C:39–9d if he or she acts "knowingly." [99 *N.J.* at 586, 494 *A.*2d 309.]

Courts have generally ascribed the culpable mental state of "knowingly" with respect to crimes that do not otherwise designate a culpable mental state. *See, e.g., State v. Demarest, supra,* 252 *N.J.Super.* at 330, 599 *A.*2d 937 (endangering welfare of a child); *State v. Brown,* 239 *N.J.Super.* 635, 642, 571 *A.*2d 1367 (App.Div.1990) (escape); *State v. A.J. Emers, Inc.,* 220 *N.J.Super.* 503, 504 n. 2, 532 *A.*2d 1124 (App.Div.1987) (failure to remit unemployment insurance contributions to evade tax payments); *State v. Merlino,* 208 *N.J.Super.* 147, 149, 505 *A.*2d 157 (App.Div.1985) (bribery); *State In Interest of*

*C.P. & R.D.*, 212 *N.J.Super.* 222, 230, 514 *A.*2d 850 (Ch.Div. 1986) (aggravated sexual assault); *see also State v. Savoie*, 67 *N.J.* 439, 457–60, 341 *A.*2d 598 (1975) (pre-Code crime of extortion by a public officer, *N.J.S.A.* 2A:105–1, which did not specify culpability, "require[s] purposeful and knowing action as to each element").

The State contends that even though the gap-filler provision must be invoked, it does not serve to impute the culpability standard of "knowingly" to the injury/force element of robbery. The State argues that the injury/force component of robbery is the equivalent of a simple assault and is therefore controlled by the culpability standard applicable to a simple assault. Under *N.J.S.A.* 2C:12–1(a) a person is guilty of simple assault if he or she "[a]ttempts to cause or purposely, knowingly or recklessly causes bodily injury to another." The State reasons that the injury/force element incorporates the simple assault culpability standard of recklessness.

The legislative history of the Code is instructive. It indicates that although the Code generally supplanted the common law, its drafters were not indifferent to traditional doctrine, and, with respect to some crimes, retained their common-law characteristics. Robbery, as a Code crime, inherited some of its common-law features. *State v. Carlos, supra,* 187 *N.J.Super.* at 414, 455 *A.*2d 89 (noting the "legislative plan in the Code to retain the common law touchstones of the crime, to wit, larceny coupled with fear, force, intimidation or assaultive behavior"). There is, however, no evidence to suggest that "recklessness" was a culpable mental state applicable to the so-called assaultive element of pre-Code robbery. *See, e.g., State v. Cottone,* 52 *N.J.Super.* 316, 323, 145 *A.*2d 509 (App.Div.1958) (citing 2 East, Pleas of the Crown, c. 16, sec. 124, p. 707 (1806)); *see also State v. Butler,* 27 *N.J.* 560, 589, 143 *A.*2d 530 (1958) (robbery statute, *N.J.S.A.* 2A:141–1, which defined robbery as the "felonious taking of personal property from the person or custody of another by force or intimidation," was declarative of common-law). The cases uniformly required the presence of violence or

threat but did not address the mental state that must accompany that conduct. Thus, the common law did not place separate or discrete significance on the culpability associated with the assaultive aspect of robbery. Consequently, there is no basis rooted in the common law for assuming that "recklessness" was intended to be a part of the Code definition of robbery under *N.J.S.A.* 2C:15–1a(1).

Consideration of legislative history must also take into account the influence of the American Law Institute's *Model Penal Code* (Official Draft 1962) (MPC) in the long and complicated development of the Code. *See State v. Savoie, supra,* 67 *N.J.* at 457–60, 341 *A.*2d 598 (proposed Code found "largely parallel" to MPC and considered in determining legislative intent with respect to culpability standard for pre-Code crime). The MPC definition of robbery is similar to that initially included in the Code, although it required "serious bodily injury" in the course of the commission of a theft, MPC § 222.1, as compared to the Code counterpart, which originally required only "bodily injury." *N.J.S.A..* 2C:19–1; *L.*1978, *c.* 95, § 2C:19–1. Furthermore, the MPC definition of robbery was initially drafted to read that recklessness was required for the injury element of robbery. *See* MPC § 222.1 (tentative draft 1960).

Although the MPC definition for robbery in its final form did not directly specify recklessness as the culpability required for that element, MPC § 222.1, the MPC did not reject recklessness as the relevant standard. As the MPC Commentary on robbery points out, the term "recklessly" was omitted in the final version because the MPC gap-filler, § 2.02(3), made recklessness the culpability standard in the absence of any specification. *A.L.I. Model Penal Code and Commentaries,* Vol. II: § 222.1, Comment 4(b), p. 113–14 (hereafter MPC Commentary).

Even though the drafters of the MPC apparently thought there was a parallel between the MPC and the New Jersey Code, it is not obvious that the Code Commission intended to follow the MPC approach with respect to using recklessness as

the culpable mental state for its own injury element. There is no indication that the Code Commission favored the inclusion of "recklessness" in robbery. In fact, the Code Commission noted that there was some question as to whether recklessness should be applied in simple assault. *Final Report, supra,* at 175–76. Notwithstanding, the MPC Commentary on robbery states that the New Jersey Code then in existence, *N.J.S.A.* 2C:19–1, *also* required recklessness for its actual or threatened injury element of robbery. MPC Commentary § 222.1, cmt. 4(b) n. 56, p. 114 (1980).

We do not share the MPC's commentators' belief, however, that the New Jersey Code contemplated recklessness as the culpability standard for the injury/force element of robbery. That the Code Commission omitted "recklessness" for the same reason that it had been omitted from the final version of the MPC definition of robbery, namely, that "recklessness" was otherwise made applicable by the relevant gap-filler provision, is not apparent. The gap-filler provision of the Code in existence at the time the MPC was being completed did not, as did the MPC gap-filler provision, expressly specify "recklessness" as the imputable culpable mental state with respect to crimes whose definitions did not designate or otherwise necessarily involve a particular culpability. In fact, the Code gap-filler was then inexplicit about the kind of culpability required for offenses that did not spell out any level of culpability. As first enacted, it stated that "[a] statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, should be construed as defining crime with mental culpability." *N.J.S.A.* 2C:2–2c(3); *L.*1978, *c.* 95, § 2C:2–2.

In addition, the Legislature in 1981 made significant changes in the gap-filler statute. It removed the general term "mental culpability" and replaced it with "the culpability defined in paragraph b(2) of this section." *N.J.S.A.* 2C:2–2c(3); *L.*1981, *c.* 290, § 4. "[P]aragraph b(2)," it must be emphasized, expressly defined culpability to be "knowingly," and, further, clearly and carefully differentiated "knowingly" from the more culpable

state of "purposely" and the less culpable states of "recklessly" or "negligently." *N.J.S.A.* 2C:2–2b(1)–(4). Hence, to the extent the prior gap-filler statute under the Code might have been construed to permit the implication of recklessness as the requisite culpable mental state for the injury element of robbery, that option was expressly removed by the Legislature's unmistakable specification of "knowledge" as the relevant culpability state.

The State contends that apart from the absence of evidence that the Legislature intended to specify "recklessness" as the culpable mental state for the injury/force element of robbery, it achieved that result impliedly and indirectly by equating the injury/force element of robbery with simple assault. The State thus describes robbery as the combination of two distinct crimes, namely, theft and simple assault. The MPC Commentary emphasized that each element of robbery constituted a distinct offense. "Robbery then, consists of a combination of theft and actual or threatened injury. Each element of it consists, under the [MPC], of a separate offense." *Final Report, supra,* at 213 *quoted in* Cannel, cmt. 2 at 323 (citations omitted). However, neither the New Jersey Code nor its Commentary, in defining robbery, indicated that the existing injury element constituted a "separate offense" or mentioned the term "assault" or otherwise implied that the crime of "assault" would alone encompass what the Legislature deemed actual or threatened bodily injury with respect to robbery. *Ibid.*

The Appellate Division in *State v. Battle,* 209 *N.J.Super.* 255, 507 *A.*2d 297, *certif. denied,* 105 *N.J.* 560, 561, 523 *A.*2d 194 (1986), indicated that under particular circumstances robbery could consist of the combination of an assault together with a theft. The defendant there was convicted of second-degree robbery and aggravated assault, having accosted a sixty year-old woman, throwing her to the ground and grabbing her purse from her arm before fleeing. The Appellate Division vacated the aggravated assault conviction on the grounds that no facts had been adduced at trial that would have supported the jury's

finding that defendant was guilty beyond a reasonable doubt of an attempt to inflict serious bodily harm on his victim. *Id.* at 258–59, 507 *A*.2d 297. In describing the so-called "assault" element of robbery, the court stated:

> In effect, then, what the Legislature has clearly done in respect of the relationship between *N.J.S.A.* 2C:12–1 and 2C:15–1 is to designate a theft attended by a simple assault, as defined by *N.J.S.A.* 2C:12–1(a), as a second-degree robbery and a theft attended by an aggravated assault, as defined by *N.J.S.A.* 2C:12–1(b), as first-degree robbery. In each case the respective assault is an element of the robbery.
>
> [*Id.* at 260, 507 *A*.2d 297.]

However, as the Appellate Division observed in the instant case, the *Battle* court's characterization "was not intended to be a complete description of second-degree robbery" because one could be found guilty of second-degree robbery in contexts in which one could not similarly be found guilty of simple assault. 242 *N.J.Super.* at 504, 577 *A*.2d 537. Hence, robbery cannot be viewed merely as theft accompanied by simple assault.

Although neither the Code nor the Code Commentary referred to the injury/force element of robbery as an "assault," the MPC Commentary actually alluded to its injury element of robbery as comprising "some types of assault." MPC Commentary, § 222.1, cmt. 1, p. 98. That characterization, however, appears to have been disregarded by our Legislature in enacting the Code. Not only is the term "assault" strikingly absent from the Code's definition of robbery, but the Legislature also modified its treatment of robbery in such a way as to remove any doubt that the existing injury component of robbery would be tantamount to simple assault. In 1979, the Legislature transferred robbery from the section of the Code dealing with crimes against property into the section of the Code dealing with crimes "involving danger to the person." *N.J.S.A.* 2C:19–1 (later amended); *L.*1979, *c.* 178, § 28. In 1981, the Legislature also altered the language of the statute to provide a more expansive definition of robbery, adding the words "or force" to the injury component of robbery. *N.J.S.A.* 2C:19–1 (as amend-

ed); *L.*1981, *c.* 22, § 1. It thereby contemplated a form of robbery in which "no bodily injury is inflicted." Statement by the Senate Judiciary Committee on *L.*1981, *c.* 22, § 1. *See State v. Sein,* 124 *N.J.* 209, 212–14, 590 *A.*2d 665 (1991) (force is any degree of physical power or strength required to overcome physical resistance to taking of property).

Thus, the Legislature, in expanding the concept of robbery, did not at the same time limit its injury/force element to the crime of assault. *See State v. Battle, supra,* 242 *N.J.Super.* at 504, 577 *A.*2d 537. With simple assault, injury is required to occur when force is actually applied against the victim. *N.J.S.A.* 2C:12–1a(1). Simple assault may also entail putting "another in fear of imminent *serious* bodily injury" when no force is used. *N.J.S.A.* 2C:12–1a(3) (emphasis added). However, a thief commits second-degree robbery but not simple assault if he or she only threatens another with bodily injury regardless of its seriousness, *N.J.S.A.* 2C:15–1a(2), or uses force that entails no injury, *ibid.; e.g., State v. Sein, supra.*

We find, therefore, that the New Jersey Code of Criminal Justice and the MPC are not sufficiently yoked in their treatment of robbery to suggest that the MPC's selection of recklessness to qualify the culpability condition for its injury element of robbery dictated a similar choice by the Legislature in enacting robbery under the Code.

We are satisfied that the shorthand understanding that robbery equals theft plus assault is inconsistent with the clear, albeit complicated, language of the Code. Despite its complexity, the Code unmistakably requires that knowledge be ascribed as the relevant culpable state for any material element of a crime that does not under its own statutory definition "expressly designate" or does not "necessarily involve" a different culpable state. The Legislature obviously intended to define the theft element of robbery as theft or attempted theft, and clearly did so. Although second-degree robbery actually equals theft plus several elements that closely resemble simple as-

sault, if the Legislature had intended to define the injury/force element of robbery as simple assault or its equivalent, it could have said so with equal ease. In any event, it remains a legislative prerogative to address the requisite culpability state of robbery including the option to provide expressly that theft accompanied by reckless infliction of injury or use of force may constitute robbery. *See State v. Demarest, supra,* 252 *N.J.Super.* at 334, 599 *A.*2d 937.

Moreover, assuming ambiguity, we are constrained to construe the robbery statute strictly. *In re DeMarco,* 83 *N.J.* 25, 36–37, 414 *A.*2d 1339 (1980). Thus, any uncertainty with respect to legislative intent concerning the culpability of criminal conduct should be resolved in favor of an interpretation that requires some form of intentional conduct. *Cf. State v. Savoie, supra,* 67 *N.J.* at 457–60, 341 *A.*2d 598 ("mental element" of criminality ordinarily consists of motive or intent to perform an act). Furthermore, if the legislative directive to fill any statutory culpability gap concerning the injury/force element of robbery with the mental state of "knowledge" were otherwise unclear or ambiguous, the implication of a lesser state of culpability would conflict with the tenet that penal statutes are not to be extended by implication. *State v. Provenzano,* 34 *N.J.* 318, 322, 169 *A.*2d 135 (1961) (statutes cannot be "extended by tenuous interpretation beyond the fair meaning of [their] terms lest [they] be applied to persons or conduct beyond the contemplation of the legislature.").

We are, moreover, confident that in so construing the statute we are not defeating the legislative intent. Our interpretation of the robbery statute is consistent with the Legislature's interpretation of the distinction between knowledge and recklessness. "A person acts knowingly with respect to a result of his conduct if he is aware that it is practically certain that his conduct will cause such a result." *N.J.S.A.* 2C:2–2b(2). A person acts recklessly, however, when he or she "consciously disregards a substantial and unjustifiable risk" that a particular result will occur, *N.J.S.A.* 2C:2–2b(3). The Commentary to

the *Final Report* suggests that recklessness resembles knowledge in that both involve a state of awareness: the awareness in knowledge being "certainty" of a result, that of "recklessness" involving the conscious disregard of a "substantial and unjustifiable risk" that a result will occur. See *Final Report, supra,* at 41–42.

The difficulty in applying the "knowledge" standard in this case stems from a perception of that the injury or force seemingly occurred only as an incident following the theft itself. That perception is reminiscent of some of the common-law cases that appeared indifferent to the culpability involved in the injury or threat that was "present" in connection with a theft. See discussion, *supra* at 142–143, 603 *A.*2d at 25–26. Nevertheless, as evidenced from its legislative history, the injury/force element in robbery under the Code involves "conduct," and cannot be regarded as simply an "attendant circumstance" requiring only an awareness by the defendant of its existence. *N.J.S.A.* 2C:2–2b(2).

The determination that "knowledge" is the requisite mental state for the injury/force element of robbery will not excuse defendants who act under circumstances that elevate the likelihood of injury or force to a level that is a practical certainty. Those will be circumstances known to the defendant from which it can be inferred that the infliction of injury or the use of force would necessarily result from the attempt to commit a theft or that the theft could not be attempted without the occurrence of injury or force to other persons. In this case, we conclude that a jury could readily find beyond a reasonable doubt that defendant's actions exceeded recklessness with respect to the injuries and force visited on patrons by his pell-mell flight across a crowded casino floor.

Finally, we cannot accept the State's argument that any deficiencies in the trial court's charge were harmless. The State argued that the trial court's jury instruction sufficed to establish a culpability requirement. The State contends that by

defining "purposely" in connection with the theft element, the court adequately instructed the jury that the use of force or the infliction of injury must likewise have been done purposely. The Appellate Division correctly rejected this position. 242 *N.J.Super.* at 502, 577 *A.2d* 537. We are satisfied that the charge did not fully explain the essential elements of robbery. The trial court's definition of "purposely" was confined to its explanation of theft; it did not instruct the jury to determine that the infliction of injury or use of force must have been done knowingly.

## IV

We affirm the judgment of the Appellate Division, reversing defendant's robbery convictions and remanding for a new trial. On remand, the court should charge the jury that the State must prove that, in the course of committing a theft, defendant knowingly inflicted bodily injury on, or used force against, another.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI, and STEIN—7.

*For reversal*—None.