287 N.J. Super. 240 (1996)
670 A.2d 1096
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DAVID L. ROBERTSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 4, 1995.
Decided February 7, 1996.
*241 Before Judges PETRELLA, SKILLMAN and P.G. LEVY.
Seymour Gelzer argued the cause for appellant (Mr. Gelzer, of counsel and on the brief).
*242 Paul H. Heinzel, Deputy Attorney General, argued the cause for respondent (Deborah T. Poritz, Attorney General, attorney; Mr. Heinzel, of counsel and on the brief).
The opinion of the court was delivered by Paul G. LEVY, J.A.D.
Defendant was charged by indictment with committing the fourth degree crime of "unlawful regulated activity in a freshwater wetlands or transition area by willfully or negligently engaging in a regulated activity within a freshwater wetlands or transition area without a freshwater wetlands permit or a transition area permit issued by the Department of Environmental Protection, contrary to the provisions of N.J.S.A. 13:9B-9a, N.J.S.A. 13:9B-17a and N.J.S.A. 13:9B-21f." He was convicted and sentenced to probation for two years, conditioned on his obtaining and maintaining full time employment, and fined $5,000 payable $100 per month during the period of probation.
Defendant claims to be a farmer raising chickens and livestock. Desiring to level part of his land to make it into pasture for grazing, he decided to copy his neighbor who had filled the property next door with wood chips. Accordingly, defendant arranged to have more than 100 tons of wood chips brought to his property. The chips were concentrated in an area slightly larger than one acre of the total four to six acres of his property.
When local authorities complained about the large amount of wood chips being dumped on defendant's property, a prosecutor's detective inspected the site along with defendant, the municipal zoning officer and representatives of the Department of Environmental Protection (DEP) and the county health department. The next day, defendant voluntarily gave a statement to the detective, explaining that he intended to mix the wood chips with lime and horse manure to produce pasture for cattle. Defendant indicated little knowledge of the technisms of freshwater wetlands, and he admitted he did not have "any permission from any local or state agency to fill the property."
*243 A DEP investigator inspected the site at least four times and performed several tests in the area of the wood chips. He utilized a "three-parameter test" developed by the federal government, and observed hydrophytic vegetation, soil types indicative of both freshwater wetlands and a transition area and hydrology indicative of wetlands. Based on his observations and experience, he opined that the area covered with wood chips was wetlands and that placing wood chips there constituted a regulated activity requiring a permit from the DEP. The investigator indicated that wetlands are located on a certain "Federal" map showing the soil types on defendant's property, which were the same types of soil he found during his investigation. He also said that these soil types are indicated on the "Federal" map but not on any local maps.
Defendant presented a soil survey map he had obtained from the county agricultural department some years before he began to import the wood chips. The map had some indication of soil types and defendant identified the location of his property on that map. He admitted he did not have either a freshwater wetlands permit or a transition area waiver from the DEP. His defense was based on a challenge to the validity of the investigator's testing methods and a claim that he was exempt from regulation because he was engaged in normal farming activities which encompassed the use of wood chips to make pasture. The jury found him guilty.
On appeal, defendant contends:
1. The Grand Jury was not properly instructed as to the law before handing up the indictment.
2. The most important element of proof necessary for conviction was not presented to the Grand Jury or at trial.
3. The statute is unconstitutional insofar as criminal convictions are concerned.
4. The County Prosecutor lacked authority to indict or prosecute.
5. The indictment is defective.
6. Defendant was denied effective assistance of counsel.
7. The charge to the jury was erroneous.
8. The representatives of the State of New Jersey misled the juries.
*244 Having carefully reviewed the record and the arguments advanced by the parties, we conclude that all defendant's arguments, except his challenge to the jury charge, are clearly without merit. R. 2:11-3(e)(1)(E).
The jury instructions and the trial judge's response to a question from the jury deserve further attention. A part of the Freshwater Wetlands Protection Act (the Act), N.J.S.A. 13:9B-21f provides: "A person who willfully or negligently violates this act shall be guilty, upon conviction, of a crime of the fourth degree...." The judge was concerned with how to define the element of intent (willfully or negligently) so he looked to the criminal code for guidance. He decided that he would not instruct the jury on negligent conduct; rather, he would hold the State to a higher burden of proof and define "willfully" as "purposely." He told the jury:
A person acts purposely with respect to the nature of his conduct or the result thereof if it is his conscious object to engage in conduct of that nature or to cause such a result. A person acts purposely with respect to the attendant circumstances if he is aware of the existence of those circumstances or believes or hopes that they exist. The phrases with purpose, design or with design or the equivalent terms have all the same meaning.
He then explained that the jury had to decide whether the State had proved the area in question constituted a freshwater wetlands or transition area, and if so, whether defendant engaged in a regulated activity "with a purposeful state of mind." Finally, the jury was to determine whether defendant's conduct was exempt from permit requirements as normal farming, although there was no exemption for any filling of a freshwater wetlands which changed the use, flow or circulation of the wetlands or reduced the reach of the waters.
Neither side objected to the charge as given, but during deliberations the jury asked "What was the responsibility of the defendant to verify the status of the land (wetlands or not) prior to the initiation of the unloading of the chips?". Defense counsel asked the judge to reinstruct the jury about defendant's intent, expressing a concern that the original charge, which the judge proposed *245 to repeat in response to the jury's question, "may be directing a verdict." In colloquy with counsel, the judge expressed the view that "knowledge of wetlands is not an element of the offense." After he answered the question by repeating the elements of the crime to the jury, the foreperson asked to rephrase the jury's written question and directly inquired: "[B]efore the defendant begins to do this, does he have a responsibility to investigate as to whether or not what he wishes to do can be done either with or without a permit?" The judge responded by stating that the State did not have "the burden of proving that the defendant had knowledge that it was wetlands." The foreperson asked the judge to explain that statement, but instead the judge restated the elements of the crime and emphasized that the elements did not include a requirement that the State was required to prove defendant knew the area in question was wetlands. Defense counsel objected to the judge's responses to the oral questions, again asserting that the effect of those responses was to direct a guilty verdict. Very shortly thereafter the jury returned the verdict of conviction.
The Commissioner of the DEP is authorized to enforce the Act either administratively or by reference for criminal prosecution. A close examination of N.J.S.A. 13:9B-21 leads us to conclude that enforcement is ordinarily to be brought about by administrative action based on strict liability, but in those extreme cases where a defendant willfully or negligently ignores the dictates of the Act, criminal prosecution is warranted. When the Commissioner finds a person has violated the Act or a regulation enacted pursuant to the Act, N.J.S.A. 13:9B-21(a) empowers the Commissioner to:
(1) Issue an order requiring any such person to comply in accordance with subsection b. of this section; or
(2) Bring a civil action in accordance with subsection c. of this section; or
(3) Levy a civil administrative penalty in accordance with subsection e. of this section; or
(4) Bring an action for a civil penalty in accordance with subsection e. of this section; or

*246 (5) Petition the Attorney General to bring a criminal action in accordance with subsection f. of this section.
A criminal prosecution brought pursuant to N.J.S.A. 13:9B-21f against "[a] person who willfully or negligently violates this act" would therefore require proof of willfulness or negligence as to each of the elements of the offense. The intent to be proven relates to the nature of the property as well as to the other elements of the freshwater wetlands/transition area. As such, in a criminal prosecution the State cannot rest on strict liability but must prove that a defendant knew or should have known the area in question was subject to the Act. See State v. Sewell, 127 N.J. 133, 138, 603 A.2d 21 (1992) ("... under the Code strict criminal liability is not applicable to the commission of a crime unless the legislature clearly expresses its intention to do so.").
While defendant may not have taken any action to determine whether he was subject to the Act, evidence was presented to show he did something by examining soil logs found on local maps. The jury should have been instructed to decide whether the State proved defendant was culpable in failing to ascertain the need for a permit or waiver. However, the judge took this decision from the jury by advising that the State was not required to prove defendant knew the area in question was either a wetlands or a transition area. The effect of that instruction was to make defendant strictly liable and, for practical purposes, did direct the verdict against defendant.
The conviction is reversed and the matter is remanded for a new trial or other action the prosecutor or the commissioner may deem appropriate.