708 A.2d 737

STATE OF NEW JERSEY, PLAINTIFF/RESPONDENT, v. JAMES
SMALLS, A/K/A JAMES WHITE, DEFENDANT/APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF/RESPONDENT, v. GREGO-
RY COUSAR, A/K/A ROBERT WALLS, GREGORY XHOMAS,
LARRY WILSON, GREGORY THOMAS, ROBERT WHITE, DE-
FENDANT/APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted February 18, 1998—Decided March 27, 1998.

Before Judges PRESSLER, WALLACE and CARCHMAN.

*Ivelisse Torres,* Public Defender, attorney for appellant James Smalls; (*Charles S. Lorber,* Designated Counsel; *Lisa Chadwick Thompson,* and *Sandra A. Creighton,* on the brief).

*Ivelisse Torres,* Public Defender, attorney for appellant Gregory Cousar (*Brian J. Neff,* Designated Counsel, of counsel and on the brief).

*Fred J. Theemling, Jr.,* Hudson County Prosecutor, attorney for respondent (*Jeffrey S. Ziegelheim,* Assistant Prosecutor, on the brief).

The opinion of the court was delivered by

WALLACE, J.A.D.

Defendants James Smalls and Gregory Cousar were indicted for one count of robbery. A jury found both defendants guilty of second degree robbery, *N.J.S.A.* 2C:15–1. The trial judge sentenced Smalls to an extended term of fifteen years with a six year parole disqualification and sentenced Cousar to a ten year term with a five year parole disqualification. These appeals, calendared separately, are consolidated for the purposes of this opinion.

On appeal, defendant Smalls makes the following arguments:

*POINT I.*

THE EVIDENCE WAS INSUFFICIENT TO JUSTIFY A FINDING OF GUILT BY THE JURY AS TO ROBBERY.

*POINT II.*

THE COURT COMMITTED REVERSIBLE ERROR BY FAILING TO INSTRUCT THE JURY CONCERNING THE LESSER INCLUDED OFFENSE OF DISORDERLY PERSON THEFT.

*POINT III.*

THE EXTENDED TERM OF A 15 YEAR SENTENCE IMPOSED BY THE COURT WAS EXCESSIVE AND UNREASONABLE.

Defendant Cousar makes the following arguments in his brief:

*POINT I.*

THE TRIAL COURT ERRONEOUSLY DENIED DEFENDANT'S MOTION FOR A JUDGMENT OF ACQUITTAL.

*POINT II.*

THE TRIAL COURT'S INSTRUCTIONS TO THE JURY WERE FATALLY FLAWED BECAUSE THOSE INSTRUCTIONS DID NOT ADEQUATELY EXPLAIN THE ELEMENTS OF THE ROBBERY STATUTE AND DID NOT RELATE THOSE ELEMENTS TO THE FACTS OF THIS CASE. (NOT RAISED BELOW).

A. THE TRIAL COURT'S INSTRUCTIONS FAILED TO EXPLAIN THAT SOME SLIGHT, INCIDENTAL CONTACT WITH THE PERSON OF MS. SESAY COULD NOT SATISFY THE FORCE ELEMENT OF THE ROBBERY STATUTE.

B. THE TRIAL COURT FAILED TO EXPLAIN THAT MS. SESAY'S TESTIMONY CONCERNING HOW SHE FELT AT THE TIME WOULD NOT BE DISPOSITIVE OF THE QUESTION OF WHETHER DEFENDANTS PURPOSELY PUT HER IN FEAR OF IMMEDIATE BODILY INJURY.

*POINT III.*

THE SENTENCE IMPOSED UPON DEFENDANT IS ILLEGAL AND EXCESSIVE AND SHOULD BE REVERSED.

A. THE TRIAL COURT IMPROPERLY SENTENCED DEFENDANT TO THE MAXIMUM BASE TERM AVAILABLE.

B. THE TRIAL COURT IMPROPERLY IMPOSED A PERIOD OF PAROLE INELIGIBILITY.

C. THE PERIOD OF PAROLE INELIGIBILITY IMPOSED BY THE TRIAL COURT IS EXCESSIVE.

We find merit in defendants' challenge to their robbery conviction and reverse.

The State's proofs were these. On April 25, 1995, at approximately 2:30 p.m., the victim, Jariatu Sesay, exited a check cashing store in Jersey City. She was approached by Cousar, dressed in a grey suit and carrying a newspaper. Cousar informed Sesay that he was from Zimbabwe and had been evicted by his landlord. Sesay offered to give him the telephone number of the International Institute, an organization which assists foreigners who do not have a place to stay. Cousar rejected Sesay's offer and asked her to accompany him to Jones Street in Jersey City to see a priest. Sesay was a mental health volunteer. She suspected that Cousar might be mentally ill. Sesay was then approached by Smalls who chided her on her unwillingness to help another foreigner. Sesay told Smalls that she willing to pay cab fare for Cousar to go to the Institute, but that he did not want her help.

While Sesay was talking to Smalls, Cousar began circling behind her. Sesay began to feel uncomfortable. She sensed that the two men knew each other. Sesay felt a bump above her jacket pocket. She believed it was Cousar, but she did not see him bump her. Immediately thereafter, Cousar told Smalls they had to go and the two men walked away quickly.

After the two left, Sesay checked her jacket and realized that her wallet was missing. She chased the men down Kennedy Boulevard, and after being told that they were in a grocery store, confronted them there. She grabbed the two men by their collar and demanded the return of her green card and school identification card. The two men returned to her nearly $60 "bit by bit" and "crumpled up." A short while later Detective Brian Gomm arrived and arrested both defendants.

■ With this background, we address defendants' challenges to their conviction for robbery.

*N.J.S.A.* 2C:15–1 provides:

a. Robbery defined. A person is guilty of robbery if, in the course of committing a theft, he:

(1) Inflicts bodily injury or uses force upon another; or

(2) Threatens another with or purposely puts him in fear of immediate bodily injury; or

(3) Commits or threatens immediately to commit any crime of the first or second degree.

An act shall be deemed to be included in the phrase "in the course of committing a theft" if it occurs in an attempt to commit theft or in immediate flight after the attempt or commission.

[*N.J.S.A.* 2C:15–1(a).]

■ A person is guilty of theft if he unlawfully takes movable property of another with purpose to deprive him thereof. *N.J.S.A.* 2C:20–3. The crime of theft becomes robbery, in part, when the defendant inflicts bodily injury or uses force upon another in the course of committing a theft. *See State v. Sewell,* 127 *N.J.* 133, 603 *A.*2d 21 (1992). The critical issue is whether a bump under the circumstances here was sufficient evidence of force to raise this pick pocket offense to a second degree robbery.

Both the State and the defendants rely upon *State v. Sein*, 124 *N.J.* 209, 590 *A.*2d 665 (1991), in support of their respective contentions. In *Sein*, the Court examined whether "the sudden snatching of a purse from the grasp of its owner involves enough force to elevate the offense from theft from a person to robbery as defined by *N.J.S.A.* 2C:15–1a(1)." *Id.* at 210, 590 *A.*2d 665. The Court recognized that the question of the amount of force necessary to take property from a person "to warrant the more serious penalties associated with robbery has vexed those courts that have considered the question." *Id.* at 213, 590 *A.*2d 665. The Court reviewed the legislative history of the robbery statute and concluded that our Legislature intended to adopt the majority rule which has been set forth as follows:

> [A] simple snatching or sudden taking of property from the person of another does not of itself involve sufficient force to constitute robbery, though the act may be robbery where a struggle ensues, the victim is injured in the taking, or the property is so attached to the victim's person or clothing as to create resistance to the taking. [*People v. Patton*, 76 *Ill.*2d 45, 49, 27 *Ill.Dec.* 766, 767, 389 *N.E.*2d 1174, 1175 (1979).]
>
> [*Id.* at 213–214, 590 *A.*2d 665.]

The Court also addressed the Legislature's intention in adding the phrase "or uses force" in the 1981 amendment to *N.J.S.A.* 2C:15–1a(1). The Court concluded that the amendment was "intended to clarify that the type of force required to support a robbery conviction under the pre-Code statute still would be sufficient to elevate a theft to a robbery." *Sein, supra*, 124 *N.J.* at 216, 590 *A.*2d 665. The Court further explained:

> Although the Committee Statement refers to a "purse snatching" as an example of the conduct the amendment was intended to cover, it goes on to state that snatchings rising to the level of robbery include only those that involve "some degree of force to *wrest* the object" from the victim. (Emphasis added). To "wrest" is to "pull, force, or move by violent wringing or twisting movements." Webster's Third New International Dictionary 2640 (1971). The Legislature apparently determined that the violence associated with "wresting" is deserving of more severe punishment. It did not, however, intend to eliminate the requirement that robbery by use of force include force exerted "upon another."
>
> [*Id.* at 216–17, 590 *A.*2d 665.]

The Court also looked to the Commentary to the Code definition of "theft" in reaching its conclusion. The Court noted that in

discussing theft under *N.J.S.A.* 2C:20–3, the Legislature made clear the following:

> The crime here defined may be committed in many ways, i.e., by a stranger acting by stealth or *snatching from the presence or even the grasp of the owner* or by a person entrusted with the property as agent, bailee, trustee, fiduciary or otherwise. [II] *New Jersey Penal Code: Final Report of the New Jersey Criminal Law Revision Commission* § 2C:20–3 commentary 2 at 222 (Oct.1971) [(emphasis added).]
>
> The theft statute thus includes purse-snatchings from the grasp of an owner, while the robbery statute includes purse-snatchings that involve some degree of force to wrest the object from the victim. The only way to reconcile the two statutes is to hold that robbery requires more force than that necessary merely to snatch the object.
>
> [*Sein, supra,* 124 *N.J.* at 217, 590 *A.2d* 665.]

Here, there was no struggle, no shoving or pushing, and no wrestling in order to take the victim's wallet. Moreover, the slight bumping of the victim that occurred did not even alert the victim that something was awry. This was a pickpocketing by defendants. It was not until both defendants had walked away that the victim decided to straighten her jacket and then realized her wallet was missing.

In *Sein,* the victim was aware that her purse had been snatched from under her arm, but the Court concluded that robbery required more than the force necessary merely to snatch the object. Here, the slight bump of the victim did not even alert her that her wallet had been removed from her jacket. We perceive even less force in this pickpocketing than in the purse snatching in *Sein,* which was found not to be a robbery. *A fortiori,* we are convinced that the theft of the victim's wallet here does not constitute robbery under *N.J.S.A.* 2C:15–1a(1).

We also reject the State's argument that there was sufficient evidence to warrant submission of the robbery charge to the jury as a theft committed while putting the victim "in fear of immediate bodily injury." A thief commits a second degree robbery if he or she threatens another with bodily injury regardless of its seriousness. *Sewell, supra,* 127 *N.J.* at 147, 603 *A.2d* 21. The victim here stated that the presence of the two defen-

dants close to her, one in front and one behind, made her fearful. Further, she said she was relieved when defendant left, but she did not want to give anybody the impression that she was afraid of them.

A cautious person, however, may exhibit fear in many settings that are not criminal. The focus of the robbery is on the conduct of the accused, rather than on the characteristics of the victim. *Sein, supra,* 124 *N.J.* at 217, 590 *A.2d* 665. Here, the victim had conversations with first Cousar and, later, after Smalls arrived, with Smalls. At no time did either defendant threaten the victim. Although the conduct of Cousar in holding his newspaper and referring to rent receipts made the victim believe Cousar may have had a mental problem, there was no evidence that either defendant purposely put her "in fear of immediate bodily injury." *N.J.S.A.* 2C:15–1a(2). Cousar had requested help from the victim while Smalls later chided the victim for not helping Cousar. Eventually, the two men were in front of and behind the victim. To be sure, no special words and/or conduct are required to make out a threat or to purposely put someone in fear of immediate bodily injury, but the totality of the circumstances presented must be considered. While there may be circumstances where conduct alone, without threats by one or more persons, may be sufficient to justify a conclusion that the persons purposely placed the victim in fear of immediate bodily injury, this is not such a case. We leave that to another day.

In sum, viewing the State's evidence in its entirety with the benefit of all legitimate favorable inferences, *State v. Reyes,* 50 *N.J.* 454, 458–59, 236 *A.2d* 385 (1967), there was insufficient evidence before the jury to support the conclusion that defendants used force upon the victim or purposely put her in fear of immediate bodily injury.

Finally, we reject defendant Small's contention that it was error for the judge to refuse to charge a lesser included disorderly persons offense of theft under $200. The trial judge charged the lesser included offense of theft from a person, but he declined to

charge disorderly person theft. *See N.J.S.A.* 2C:20–3. Theft from the person of the victim is a third degree offense. *See* 2C:20–2b(2)(d). All of the evidence presented demonstrated beyond a reasonable doubt that the wallet was taken from the victim's person. Consequently, it was not error for the trial judge to decline to charge a disorderly persons offense of theft. There is no doubt of the sufficiency of the proofs of the elements of theft of the person. *See N.J.S.A.* 2C:20–3 and *N.J.S.A.* 2C:20–2b(2)(d).

We, therefore, reverse the robbery conviction as to each defendant and remand for the entry of an amended judgment of conviction of theft, and for resentencing.

Because the trial judge must resentence defendants for third degree theft, we need not address their respective claims that the sentence imposed was excessive. We note, however, any sentence imposed must comply with the Code, including a clear explanation of the sentencing judge's reasons for each sentence. *See State v. Pennington,* 301 *N.J.Super.* 213, 220, 693 *A.2d* 1222 (App.Div.), *certif. denied,* 151 *N.J.* 466, 700 *A.2d* 878 (1997).

Reversed and remanded.