966 A.2d 473

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
MARCUS CASSADY, DEFENDANT–RESPONDENT.

Argued October 20, 2008—Decided March 11, 2009.

166

*Tracey L. O'Brien,* Assistant Prosecutor, argued the cause for appellant (*Theodore F.L. Housel,* Atlantic County Prosecutor, attorney).

*John W. Douard,* Assistant Deputy Public Defender, argued the cause for respondent (*Yvonne Smith Segars,* Public Defender, attorney).

*Johanna Barba Jones,* Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (*Anne Milgram,* Attorney General, attorney).

Justice RIVERA–SOTO delivered the opinion of the Court.

Defendant Marcus Cassady was convicted of two counts of second-degree robbery—one involving a teller at a bank and the second involving a salesman at a car dealership—in violation of *N.J.S.A.* 2C:15–1. He was sentenced to two consecutive ten-year terms of imprisonment, for an aggregate of twenty years' incarceration, subject to the provisions of the No Early Release Act, *N.J.S.A.* 2C:43–7.2. Although concluding that the evidence presented in respect of the robbery of the bank teller was sufficient to sustain a second-degree robbery conviction, *State v. Cassady,* 396 *N.J.Super.* 392, 397, 934 *A.*2d 644 (App.Div.2007), the Appellate Division nevertheless held that, in respect of that conviction, defendant was entitled to an instruction on theft as a lesser-included offense of robbery and, hence, defendant's conviction for second-degree robbery of the bank teller was reversed and remanded. *Id.* at 399, 934 *A.*2d 644. The panel also determined that the sentencing judge incorrectly considered and weighed the aggravating and mitigating factors concerning defendant's sentence for his conviction for the second-degree robbery of the car salesman, and thus remanded that sentence for reconsideration. *Id.* at 402, 934 *A.*2d 644.

We conclude that the trial court properly denied defendant's request for a jury instruction concerning the lesser-included offense of theft on the bank teller robbery count because, in the circumstances presented, there was no rational basis for a theft charge. We also conclude that the Appellate Division erred when it remanded defendant's sentence on the car salesman robbery charge. We therefore affirm in part and reverse in part the judgment of the Appellate Division, and reinstate defendant's convictions and sentence.

## I.

On February 2, 2004, defendant took a cab to the Cape Savings Bank located on Pacific Avenue in Atlantic City. Once there, defendant instructed the cab driver to wait while defendant entered the bank. Defendant, who is almost six and one-half feet tall, approached a teller window; in that bank, tellers are separated from the public by a solid counter topped with bullet-proof glass to a height of at least seven feet, and each teller stands on the enclosed side of the counter, in front of the cash drawer and facing the customer across the counter. He handed a withdrawal slip to the teller. That withdrawal "slip ha[d] nothing written on it, no name, no account number, no date, no signature, nothing except only the amount five thousand dollars." The teller "looked at him strangely and said [']Sir, do you have an account in this bank?[']" When defendant replied "no," the teller stated that she could not give the money to him. She testified as follows:

Then he said, ["]Please hurry up. I know how to get it.["] Still I was not doing anything and I was really shivering. At that point I was sensing something is wrong with this gentleman, and when I was waiting and thinking as to what to do, he said loudly, ["]Hurry up. I know how to get it,["] that's all I heard. The very next moment he jumped [over] the glass window, the bullet proof glass window and dropped [o]nto my counter top. That's all I know. I got scared and I dropped the keys and ran. I don't know how I did it. I ran back into the room adjacent where we have the automatic teller machine room and I locked myself into the room.

She further explained that she ran because she "was so scared I thought he would kill me." Conceding that defendant's actions were all directed towards seizing the money in the teller drawers and that defendant did not physically threaten to do the teller harm, she asked, "[h]ow can I guess that he is going to take only the money? He might do something to me ..... Harm me or [k]ill me." She explained: "That's why I got scared—to death. And I didn't know what I was doing and I don't know how I ran into the other room." The teller's account was corroborated by three other tellers who also were on duty at that time,[1] as well as by a customer then in the bank.

---

[1] The immediately adjacent teller testified that, when defendant "just reached up high and flipped over the glass[,]" she felt "[l]ike [she] was next on the list[,]"

After taking $2,410, defendant jumped back over the bullet-proof glass partition, left the bank[2] and got back into the waiting cab. He instructed the cab driver to take him to an automobile dealership where, in the course of trying to steal a car, he assaulted a car salesman. Although injured, the car salesman fought defendant to a draw, and defendant was arrested at the car lot.[3]

The Atlantic County grand jury returned an indictment charging defendant with two counts of second-degree robbery, in violation of *N.J.S.A.* 2C:15–1. Defendant's trial strategy was two-fold. First, defendant asserted that he had been misidentified, that it was not he who robbed the bank. As a fall-back position, defendant maintained that, if the jury determined he in fact had robbed the bank, then he was guilty only of theft and not robbery because he did not physically threaten the teller. Thus, during opening statements, defense counsel stated to the jury that "robbery actually means that somebody takes something from somebody else using force or threats of force, that is a very important concept to keep in mind." He urged to the jury that "there [are] very interesting principles that you have to keep in mind when you listen to this case. Was there a robbery or theft ... of

---

she felt fearful and that she "wanted to run." She explained that she "felt threatened by him coming over [the bullet-proof glass]. I didn't know if he [had] any weapon or anything like that, or what he was going to do once he got there." Another teller testified that, when defendant vaulted the bullet-proof glass barrier and entered the tellers' protected area, "[i]t frightens you. You're in a state of shock because you don't ... it's just a very frightening experience."

2 The events within the bank were video-recorded on the bank's surveillance system; the video was played for the jury at trial. Also, it was stipulated at trial that defendant's fingerprints were retrieved from the bullet-proof glass partition in the bank.

3 The events at the car dealership form the basis for the robbery conviction sustained by the Appellate Division but which was remanded for re-sentencing. Defendant did not seek certification on the sustained second-degree robbery conviction in respect of the car salesman. For that reason, we need make no further reference to those later events.

property?" Defendant repeated that refrain by asking each of the tellers if defendant had "physically threatened" them.

At the close of the evidence, defendant requested that the court charge the jury on theft as a lesser-included offense of robbery. He argued that the statute requires that, "in the course of committing a theft" the defendant must "threaten[ ] another with or purposely put[ ] him in fear of immediate bodily injury" in order to be guilty of robbery. *N.J.S.A.* 2C:15–1(a)(2). Claiming that "the focus is not on the victim but on the actions and purpose of the defendant[,]" he asserted that "there was no immediate harm or threatened or implied [harm] if [the teller] did not comply. It was always directed towards the money." He thus requested that the court include in its jury charge the offense of theft as a lesser-included offense of robbery.

The trial court rejected that request. It noted the common understanding that "people that go into a bank to take money are prepared for combat. And they are prepared to hurt people, if they have to hurt people." It explained that "if you go into a bank and in order to get that bank teller to give you the money, you have to threaten them or put them in some kind of fear. So you start with that proposition[.]" Highlighting that the victim-teller testified that she "ran because [she] was scared and didn't know if [defendant] was going to kill [her,]" the court reasoned as follows:

> And when was she scared that [she] didn't know what he was going to do to her? It was when this guy six foot four or five puts his hands on the glass and now is coming over the glass to invade her area, her secure area that is separated by a seven to seven and-a-half foot glass wall; that's why that glass wall is there [,] for protection. .... [B]ut for the fact that she was scared to death and ran, if she [remained in] front of that drawer, there is no doubt in my mind that she would have gone flying ..... So her space was invaded. And to say that under those facts and circumstances that she wasn't threatened or purposely put in fear of immediate bodily injury when a six foot five person scales a seven and a-half foot glass wall to go over into where the money drawer is, is absolutely ludicrous[.]
>
> ....
>
> The bottom line is that you have to assess the totality of the circumstances, and we are mindful ... that a bank employee should not have to take a risk being shot on the off[-]chance that the perpetrator is bluffing and the employee should have the fortitude to call the perpetrator's bluff.

. . . .

So for all of those reasons I cannot in good conscience say that . . . there [is] a rational basis to charge [theft] in this case . . . . . [F]or those reasons a lesser included charge of theft on [the robbery] counts will not be given.[4]

The trial court charged the jury solely in respect of the two robbery counts listed in the indictment. After doing so, the trial court inquired of counsel: "Did I leave anything out?" Defense counsel responded that "[n]o, everything is good."

In respect of the bank teller robbery, the jury unanimously found defendant guilty as follows: that "on the 2nd day of February, [2004], defendant Marcus Cassady in the course of committing a theft did threaten immediate bodily injury to [the bank teller] and/or did purposely put [the bank teller] in fear of immediate bodily injury[.]" At sentencing, the trial court returned to the proofs in the case, stating that

The evidence in this case was very strong. When the defendant robbed the bank, it was captured on video tape. His fingerprints were on a glass wall that he climbed over to get at the teller to get into the drawer and take money.

Defendant is at least 6-foot 5. The teller who testified was just over 5-feet. She testified how she was scared for her life and ran into another room and locked herself in that room. He absolutely put her in fear of immediate bodily injury.

. . . .

The main defense in the case appeared to be one of identification, but based on the video tape, the eyewitnesses at the bank, . . . that was a defense that was, to say the least, weak. Coupled on top of that was fingerprint evidence on the glass wall.

. . . .

Defendant brazenly robbed a Cape Savings Bank in broad daylight with witnesses there. In doing so, he intimidated and placed [the bank teller] in fear of her life. She was just over 5-feet tall, and the defendant's at least 6-feet 5 or taller. Based on his criminal record, he has little regard for the laws of society or the rights of others. Obviously, a state prison term is necessary.[5]

---

[4] Defendant then asked whether, instead, a lesser-included offense charge of simple assault would be given; the trial court rejected that suggestion stating that "[t]his is not a simple assault case by any stretch of the imagination." Defendant did not press that argument on appeal.

[5] The trial court also filed a separate written "Statement of Reasons" in support of the sentences imposed.

On each of the counts of the indictment, defendant was sentenced to the maximum, to run consecutively. Thus, defendant was sentenced to an aggregate of twenty years imprisonment, with a period of parole disqualification of seventeen years, a term of three years parole supervision upon release, and appropriate assessments.[6]

Defendant appealed. The Appellate Division, in a split decision, reversed defendant's conviction for the robbery of the bank teller. Although it concluded that the "evidence and the inferences it provides are more than adequate to permit the jurors to find, beyond a reasonable doubt, that defendant threatened the teller or purposely put her in fear of immediate bodily injury[,]" *Cassady, supra,* 396 *N.J.Super.* at 397, 934 *A.*2d 644, the panel also concluded that the trial court's "denial of defense counsel's request for a jury instruction on the lesser-included crime of theft at the bank" was error because "[t]he evidence afforded a rational basis for acquittal of robbery, based on the absence of the requisite purpose to put the teller in fear of immediate bodily injury, and conviction of theft, based on defendant's taking of the money." *Id.* at 398–99, 934 *A.*2d 644. It also remanded defendant's sentence on the car salesman robbery conviction "[b]ecause the finding of an aggravating factor based on defendant's criminal history and the reason given for rejecting mitigating factors based on harm caused and contemplated are not supported by the record[.]" *Id.* at 402, 934 *A.*2d 644.

Judge Fuentes dissented. He concurred with the panel's majority that defendant's conviction of the car salesman robbery should be affirmed, but that the sentence imposed thereon required re-sentencing. *Ibid.* However, he agreed with the trial court that there was no rational basis to charge the lesser-included

---

[6] Defendant additionally was sentenced to a concurrent four-year sentence for violating a probationary term imposed on defendant's plea of receiving stolen property; that probationary term was imposed just three days before the events at issue here, and it was imposed by the same judge who later presided over defendant's robbery trial and sentence.

offense of theft in respect of the bank teller robbery conviction. He noted that "[a] lesser-included offense must be submitted to the jury when there is a 'rational basis' for a conviction of that crime." *Ibid.* (citations omitted). He emphasized that "[t]his is a low threshold [and that i]f on the evidence it would not be *idle* to have the jury decide whether defendant had committed the lesser-included offense, it is error not to charge that offense." *Ibid.* (citations, internal quotation marks, and editing marks omitted). He concluded that, "[a]s long as the proofs leave room for a reasonable dispute, the lesser-included instruction should be given." *Ibid.*

Marshalling the relevant facts, Judge Fuentes explained that

> defendant here demanded money in a loud and intimidating voice. When this proved unsuccessful, defendant immediately jumped over a bulletproof glass partition designed to provide a measure of safety and protection to bank personnel handling money; all this speaks of only one rational construction: defendant's purpose was to place the bank teller in fear of immediate bodily injury in order to carry out or otherwise facilitate the commission of the theft.
>
> [*Id.* at 404, 934 *A*.2d 644.]

He concluded:

> Unlike a situation where defendant could obtain access to the money without removing its apparent guardian, (such as reaching into an open cash-drawer in a supermarket checkout), defendant here needed both: (1) to overcome the glass partition separating the public and private space in the bank; and (2) to chase away the teller who was standing between him and the bank's money. The conduct was thus unambiguously threatening and palpably egregious. This was a bank robbery: plain and simple. In my view, no rational jury could come to any other conclusion.
>
> [*Id.* at 404–05, 934 *A*.2d 644.]

The State appealed, as of right, the issue presented in Judge Fuentes's dissent. *N.J. Const.* art. VI, § 5, ¶ 1(b); *R.* 2:2–1(a)(2). The State separately sought certification on the question of whether the Appellate Division improperly vacated and remanded defendant's sentence on the car salesman robbery conviction. *See State v. Allegro,* 193 *N.J.* 352, 372 n. 9, 939 *A*.2d 754 (2008) (explaining that "[a] notice of appeal based on a dissent in the Appellate Division preserves for review only those issues on which the dissent was filed, and certification must be sought separately as to

all other issues" (citation omitted)). We granted that petition. 193 *N.J.* 587, 940 *A.*2d 1220 (2009). We also granted the Attorney General's application for leave to appear as amicus curiae.

## II.

The State asserts that the Appellate Division erred when it determined that the lesser-included offense of theft should have been charged in respect of defendant's bank teller robbery count because there is no rational basis in the record for such a charge. It contends that "[t]he record is replete with facts that clearly demonstrate that the victim was purposely put in fear of her life or limb by defendant." Echoing the dissent in the Appellate Division, it argues that "[t]he evidence demonstrated that this was a robbery, nothing less. Hence, there was no error in not charging the lesser-included offense." The State also urges that the remand for reconsideration of defendant's sentence for the car salesman robbery was error. In the State's view, there was sufficient evidence in the record of relevant aggravating factors for the sentencing court to impose the maximum ten-year sentence for this second-degree crime, and there was no basis for sustaining any of defendant's claimed mitigating factors.

In contrast, defendant argues that the trial court's refusal to instruct the jury on the lesser-included offense of theft in respect of the bank teller robbery was error because, he asserts, "there was a rational basis in the record for the jury to have acquitted defendant of robbery and convicted him of theft." In defendant's view, the State's assertion that "the jury's decision was itself evidence that there was no rational basis for the theft charge ... simply begs the question whether the jury could have rationally deliberated the defendant's purpose, had it been given the alternative of a lesser-included offense." In respect of the remand of defendant's sentence on the car salesman robbery count, defendant adopts the Appellate Division's reasoning.[7]

---

[7] In a letter in lieu of a formal brief in opposition to the State's petition for certification on the sentencing issue, defendant states that he "relies upon the

The Attorney General, as amicus, principally argues that the rational basis test applicable to whether a lesser-included offense charge is appropriate requires deference to the trial court's findings and that the Appellate Division failed to acknowledge the level of deference due. It asserts that defendant's "objectively menacing" conduct was incompatible with a plain theft charge; that the weight of authority from other jurisdictions compels that result; and that proper public policy demands that conclusion.

We address first whether the trial court erred in denying defendant's request that, in the circumstances, the jury be charged on theft as a lesser-included offense of robbery. We then turn to whether, applying proper appellate deference, the sentence imposed was sustainable.

## III.

"Whether an offense is an included offense of another charge requires a comparison of the statutory elements of each charge." *State v. Thomas*, 187 *N.J.* 119, 129, 900 *A.*2d 797 (2006). Because defendant asserts that the trial court should have charged theft as a lesser-included offense of robbery, we can forego that comparison, as we already have held explicitly that "theft, by definition, is a lesser-included offense of robbery." *State v. Ingram*, 196 *N.J.* 23, 39, 951 *A.*2d 1000 (2008) (citations omitted). *See also N.J.S.A.* 2C:1–8(d) (defining lesser-included offenses).

However, determining whether a charge meets the statutory definition of a lesser-included offense does not end the

opinion of the Appellate Division and his Appellate Division brief and appendix[.]" In that brief, defendant's main thrust is that the imposition of two *consecutive* maximum ten year terms—one on each of the bank teller robbery and the car salesman robbery convictions—was "manifestly excessive, unduly punitive and not in conformance with the Code of Criminal Justice." Tellingly, defendant did not challenge the aggravating factors found by the sentencing court; he claimed only—and, then, only in the alternative—that "the trial court's rejection of two *mitigating* factors was erroneous."

inquiry. *N.J.S.A.* 2C:1–8(e) commands that "[t]he court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." We have stated this two-prong test thusly: "whether an included offense charge is appropriate requires (1) that the requested charge satisfy the definition of an included offense set forth in *N.J.S.A.* 2C:1–8 (d), and (2) that there be a rational basis in the evidence to support a charge on that included offense." *Thomas, supra,* 187 *N.J.* at 131, 900 *A.*2d 797. Also, when, as here, it is the defendant who requests a lesser-included offense charge, "whether the lesser offense is strictly 'included' in the greater offense . . . is less important . . . than whether the evidence presents a rational basis on which the jury could acquit the defendant of the greater charge and convict the defendant of the lesser." *State v. Brent,* 137 *N.J.* 107, 117, 644 *A.*2d 583 (1994). *See generally, Thomas, supra,* 187 *N.J.* at 130–32, 900 *A.*2d 797 (explaining constitutional limitations on lesser-included offense charges). That said, "sheer speculation does not constitute a rational basis." *Brent, supra,* 137 *N.J.* at 118, 644 *A.*2d 583.

Applying that analytical framework, the trial court properly focused on whether there was a rational basis for defendant's requested theft charge as a lesser-included offense of robbery. Having listened to the testimony at trial, assessed the credibility of the witnesses and viewed the video tape of the robbery itself, the trial court rejected defendant's request, reasoning that to state that the facts supported anything other than a robbery conviction "is absolutely ludicrous[.]" Our independent review of the record compels us to agree. The facts as developed at trial were clear and unequivocal: defendant entered a bank; he spoke menacingly to a teller, demanding money; when the teller failed to hand over the money, defendant vaulted a bullet-proof glass partition, landing on the inside portion of the teller's counter where the teller stood in front of her cash drawer; defendant then began "pulling the [cash] drawer" where the teller stood and, fearing for her life, she fled; defendant took the money in the teller's drawer, jumped back over the bullet-proof glass partition, and escaped. In those

circumstances, Judge Fuentes's succinct and pointed observation in dissent speaks volumes: "This was a bank robbery: plain and simple. In my view, no rational jury could come to any other conclusion." *Cassady, supra,* 396 *N.J.Super.* at 405, 934 *A.*2d 644 (Fuentes, J., dissenting). Further, to claim that defendant's actions in this case merely constituted a theft improperly minimizes defendant's conduct and wrongfully belittles its import and consequences. We therefore reject as unfounded the Appellate Division's conclusion that "[t]he evidence afforded a rational basis for acquittal of robbery, based on the absence of the requisite purpose to put the teller in fear of immediate bodily injury, and conviction of theft, based on defendant's taking of the money." *Id.* at 399, 934 *A.*2d 644.

## IV.

Although it sustained defendant's conviction for the car salesman robbery, the Appellate Division vacated the ten-year sentence imposed thereon. It remanded defendant's sentence on that count "[b]ecause the finding of an aggravating factor based on defendant's criminal history and the reason given for rejecting mitigating factors based on harm caused and contemplated are not supported by the record[.]" *Id.* at 402, 934 *A.*2d 644. We disagree.

The rationale underlying our sentencing scheme bears repeating:

> The dominant, if not paramount, goal of the [New Jersey] Code [of Criminal Justice] is uniformity in sentencing. The Code was intended to replace the unfettered sentencing discretion of prior law with a structured discretion designed to foster less arbitrary and more equal sentences. Indeed, the Code's drafters established a general framework to guide judicial discretion in imposing sentences to ensure that similarly situated defendants did not receive dissimilar sentences.... [W]e remain mindful that there can be no justice without a predictable degree of uniformity in sentencing.
>
> [*State v. Natale,* 184 *N.J.* 458, 485, 878 *A.*2d 724 (2005) (citations, internal quotation marks and editing marks omitted).]

That desired goal—uniformity in sentencing—is achieved through the careful application of statutory aggravating and mitigating

factors. *Compare N.J.S.A.* 2C:44–1(a) (listing enumerated aggravating factors), *with N.J.S.A.* 2C:44–1(b) (listing enumerated mitigating factors). In the sentencing context, the Code of Criminal Justice "delegates to judges, not juries, the consideration of aggravating [and mitigating] factors for the purpose of imposing fair and uniform sentences." *Natale, supra,* 184 *N.J.* at 486, 878 *A.*2d 724. That judicial exercise is not performed in a vacuum, for "every judge must 'state on the record' how he or she arrived at a particular sentence." *Id.* at 488, 878 *A.*2d 724 (citing *N.J.S.A.* 2C:43–2(e); *R.* 3:21–4(g)). The sought-for outcome is clear: "the judge's obligation to justify the sentence by referencing the mitigating and aggravating factors will continue to bring rationality to the process and minimize disparate sentencing." *Ibid.* In the end, "[t]he touchstone is that the sentence must be a reasonable one in light of all the relevant factors considered by the court." *Ibid.*

We acknowledge that "[p]ronouncement of judgment of sentence is among the most solemn and serious responsibilities of a trial court. No word formula will ever eliminate this requirement that justice be done." *State v. Roth,* 95 *N.J.* 334, 365, 471 *A.*2d 370 (1984). For that reason, adherence to the Code's sentencing scheme triggers limited appellate review. Although "appellate courts are expected to exercise a vigorous and close review for abuses of discretion by the trial courts[,]" *State v. Jarbath,* 114 *N.J.* 394, 401, 555 *A.*2d 559 (1989), "when reviewing a trial court's sentencing decision, an appellate court may not substitute its judgment for that of the trial court." *State v. Evers,* 175 *N.J.* 355, 386, 815 *A.*2d 432 (2003) (citation, internal quotation marks and editing marks omitted). Stated differently,

> [a]n appellate court is bound to affirm a sentence, even if it would have arrived at a different result, as long as the trial court properly identifies and balances aggravating and mitigating factors that are supported by competent credible evidence in the record. Assuming the trial court follows the sentencing guidelines, the one exception to that obligation occurs when a sentence shocks the judicial conscience.
> [*State v. O'Donnell,* 117 *N.J.* 210, 215–16, 564 *A.*2d 1202 (1989) (citations omitted).]

In the end, "[t]he fundamental principle is that an appellate court should not second-guess a trial court's finding of sufficient facts to support an aggravating or mitigating factor if that finding is

supported by substantial evidence in the record." *Id.* at 216, 564 A.2d 1202. We have pledged that "[w]hen conscientious trial judges exercise discretion in accordance with the principles set forth in the Code and defined by us . . . , they need fear no second-guessing." *Roth, supra,* 95 *N.J.* at 365, 471 A.2d 370 (citation omitted).

 An application of those principles yields the conclusion that, notwithstanding any perceived harshness in the sentence imposed, the sentencing court properly weighed and considered the relevant aggravating and mitigating factors and, hence, the sentence it imposed must be affirmed unless it "shocks the judicial conscience." After surveying the trial evidence, the sentencing court first addressed the imposition of consecutive sentences:

> The Court is of the opinion that these [the bank teller robbery and the car salesman robbery] are two separate incidents separated by approximately an hour and each had a different motive, (1) to steal money from a bank, and (2) to steal a car from a car dealership. They are both robberies. The jury found him guilty of both and he should not get the benefit of any free crime nor should he benefit from his attempt to manipulate and play fast and loose with the Court.

### Concurrent vs. Consecutive Sentences

> The State requests consecutive sentences in this case, while defendant argues for concurrent sentences. The Court has considered all of the factors set forth under *State v. Yarbough* [, 100 *N.J.* 627, 498 A.2d 1239 (1985),] to determine if consecutive sentences are appropriate in this case. It appears that the *Yarbough* factors weigh heavily in favor of consecutive sentences.
>
> 1. These crimes and their objectives were predominantly independent of each other (stealing money and *then* attempting to steal a car).
>
> 2. They involved separate acts of violence against separate victims (threats and intimidation of [the bank teller] and the physical assault during the robbery on [the car salesman] ); and
>
> 3. The crimes were committed at different times and places (the robbery of [the bank teller] took place in the Cape Savings Bank at approximately 10:00 a.m., the robbery of [the car salesman] occurred at the [car] dealership, approximately 30 minutes or so later and approximately 2 miles away).
>
> These factors are the most persuasive to consecutive sentences. Simply stated, they were separate crimes, against separate victims, at separate times, and in

different locations. No one, most of all this defendant, should be given any free crime benefit.[8]

Because the sentencing court faithfully paired the *Yarbough* factors with the facts as found by the jury, there is no basis upon which to upend its reasoning supporting the imposition of consecutive sentences. We turn then to the length of the actual sentences imposed.

Defendant was convicted of two second-degree crimes, each of which carries a presumption of imprisonment from a minimum of five to a maximum of ten years. *N.J.S.A.* 2C:43–6(a)(2); *N.J.S.A.* 2C:44–1(d). In determining to sentence defendant to the very top of the range on each robbery conviction, the sentencing court reasoned at length as follows:

### Aggravating Factors

**Aggravating Factor 3.** The risk defendant will commit another crime.

This is a strong Aggravating Factor. Defendant committed these crimes only three days after being released from custody on a Receiving Stolen Property conviction. Defendant was still on probation from that conviction at the time these crimes were committed. Additionally, [d]efendant has five outstanding matters in Florida, including a warrant for failure to appear on a felony Grand Theft charge.

**Aggravating Factor 6.** The extent of defendant's prior criminal record and the seriousness of the offenses charged.

This case represents [d]efendant's second conviction in New Jersey. As previously noted, he has numerous matters outstanding in Florida, including the felony Grand Theft charge and several misdemeanor Worthless Check charges.

**Aggravating Factor 9.** The need for deterring the defendant and others from violating the law is a very strong Aggravating Factor.

The need for specific deterrence is clear in this case. Defendant committed these acts only 3 days after release from a 160–day period [of] incarceration on his previous conviction. Clearly, that term of imprisonment did not deter his criminal behavior. Neither did the fact that he was on probation. There is also a need for general deterrence. Society cannot tolerate the type of crime sprees like the one engaged in by this [d]efendant. A strong message must be sent that force and intimidation are not the proper tools for obtaining that which does not belong to you.

The Court considered Aggravating Factors 1 and 2 [the nature and circumstances of the offense and the gravity and seriousness of harm inflicted on the

---

[8] This analysis appears in the sentencing court's separately filed "Statement of Reasons" that was read into the record at sentencing almost verbatim.

victim] but in order to completely give [d]efendant the benefit of doubt on those Aggravating Factors [one can]not find [the] same as [it is] the Court's position. that [Aggravating Factors 1 and 2] would be too close to some of the elements of a robbery and, hence, could be considered double-counting.

### Mitigating Factors

The Court has considered [d]efendant's arguments as to the Mitigating Factors in this case. Defendant's arguments as to Mitigating Factors 1 and 2 [that defendant's conduct neither caused nor threatened serious harm, and defendant did not contemplate his conduct would cause or threaten serious harm] are devoid of merit. In finding [d]efendant guilty of robbery, the jury necessarily found that [d]efendant knowingly caused or threatened serious bodily harm. Mitigating Factors 3 and 4 [that defendant acted under a strong provocation, and that there were substantial grounds tending to excuse or justify defendant's conduct] do not apply, as [d]efendant's argument that he was provoked by the victims to rob the bank and to attempt to steal a car are wholly spurious and completely without merit. Moreover, there are no grounds that tend to establish a defense to [d]efendant's conduct in either incident. Mitigating Factor 6 [that defendant has or will compensate the victims] does not apply, as there is no restitution warranted in this case. Finally, [d]efendant's arguments as to Mitigating Factors 8, 9 and 10 [that defendant's conduct was the result of circumstances unlikely to reoccur; that defendant's character and attitude indicate he is unlikely to re-offend; and that defendant is particularly likely to respond to probationary treatment] also fail. Defendant's criminal record, especially the fact that he committed these crimes while on probation and only 3 days after being released from custody, evidence the fact that defendant does not respond well to probationary treatment and is highly likely to re-offend.

The Court is convinced that the Aggravating Factors in this case substantially outweigh the non-existent Mitigating Factors.[9]

 Although the imposition of consecutive maximum sentences on two second-degree crimes may, at first blush, appear harsh, one cannot quarrel with the sentencing court's methodology and conclusions: it set forth the facts on which it relied; it applied the proper *Yarbough* factors in determining whether to impose consecutive or concurrent sentences; and it applied the aggravating and mitigating factors appropriately. In those instances, our task is clear. If a sentencing court observes the procedural protections imposed as part of the sentencing process, its exercise of sentencing discretion must be sustained unless the sentence

---

[9] Again, the sentencing court essentially read its "Statement of Reasons" into the sentencing hearing record.

imposed "shocks the judicial conscience." Defendant's sentences, albeit lengthy, do not cross that threshold. Therefore, the sentences imposed by the sentencing court should not have been vacated.

## V.

For the foregoing reasons, the judgment of the Appellate Division concluding that the evidence at trial was sufficient to sustain defendant's conviction for the robbery of the bank teller is affirmed; the judgment of the Appellate Division to the effect that the trial court erred in failing to instruct the jury on theft as a lesser-included offense of robbery in respect of the bank teller robbery is reversed; the judgment of the Appellate Division vacating defendant's sentence on the car salesman robbery is reversed; and defendant's convictions on both the bank teller robbery and the car salesman robbery, and the sentences imposed thereon, are reinstated.

JUSTICE LONG, dissenting.

"[J]ust as 'a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor[, so has a] parallel rule ... been applied in the context of a lesser[-]included[-]offense instruction.'" *State v. Sloane,* 111 *N.J.* 293, 303, 544 *A.*2d 826 (1988) (omission and second alteration in original) (quoting *Mathews v. United States,* 485 *U.S.* 58, 63, 108 *S.Ct.* 883, 887, 99 *L.Ed.*2d 54, 61 (1988)). Under our law, a criminal defendant need only scale a "low threshold" to avail himself of a jury charge on a lesser-included offense. *State v. Crisantos,* 102 *N.J.* 265, 278, 508 *A.*2d 167 (1986). Successfully surmounting that threshold depends exclusively on "whether the evidence presents a rational basis on which the jury could acquit the defendant of the greater charge and convict the defendant of the lesser." *State v. Brent,* 137 *N.J.* 107, 117, 644 *A.*2d 583 (1994) (citing *State v. Purnell,* 126 *N.J.* 518, 531, 534, 601 *A.*2d 175 (1992)); *see also* Cannel, *New Jersey*

*Criminal Code Annotated,* comment 12 on *N.J.S.A.* 2C:1–8 (2008) ("[W]here the defendant makes the request and the State objects, the facts proved at trial should be evaluated to ensure that there is a rational basis for a jury to reject the greater charge and convict of the lesser; wherever there is such a basis, the lesser charge should be given."). It cannot be overstated that "[t]he question at that stage of the proceedings centers on the *existence of evidence* to support the lesser[-]included offense, and *not on its worth." State v. Samuels,* 189 *N.J.* 236, 251, 914 *A.*2d 1250 (2007) (emphasis added). That there is also evidence upon which a jury could convict a defendant of the greater offense is essentially irrelevant to the rational-basis analysis. *See State v. Savage,* 172 *N.J.* 374, 397, 799 *A.*2d 477 (2002) (citing *State v. Mejia,* 141 *N.J.* 475, 489, 662 *A.*2d 308 (1995)).

As the majority correctly observes, " 'theft, by definition, is a lesser-included offense of robbery.' " *Ante* at 177, 966 *A.*2d at 480 (quoting *State v. Ingram,* 196 *N.J.* 23, 39, 951 *A.*2d 1000 (2008)); *see N.J.S.A.* 2C:15–1(a). Upon request therefore, the trial judge was required to include a theft charge in the jury instruction if there existed a rational basis in the record to acquit Cassady of robbery, but to convict him of theft. That rational basis exists here because there is evidence in the record that casts doubt on the existence of the prerequisite mental state for elevating theft to robbery: whether Cassady "purposely put [the teller] in fear of immediate bodily injury" in the course of stealing the money from her drawer. *N.J.S.A.* 2C:15–1(a)(2).

It is undisputed that Cassady never touched or threatened the bank teller, and the record contains no direct evidence that his purpose was to put her "in fear of immediate bodily injury." *N.J.S.A.* 2C:15–1(a)(2). To be sure, the teller may well have felt fear during the course of her encounter with Cassady. Indeed, such a response is understandable. But it is not her response, however reasonable, that elevates a theft to robbery. Only evidence that it was Cassady's "conscious object" to place her in fear of immediate bodily injury will satisfy the standard. *N.J.S.A.*

2C:2–2(b)(1); *N.J.S.A.* 2C:15–1(a)(2); *see State v. Smalls,* 310 *N.J.Super.* 285, 292, 708 *A.*2d 737 (App.Div.1998) (noting that focus of robbery determination is defendant's conduct, not victim's characteristics, because "[a] cautious person ... may exhibit fear in many settings that are not criminal.").

A review of the entire trial record reveals that there is " 'room for dispute' " regarding Cassady's purpose, thereby satisfying the rational-basis test of *N.J.S.A.* 2C:1–8(e). *State v. Mauricio,* 117 *N.J.* 402, 415, 568 *A.*2d 879 (1990) (quoting *Crisantos, supra,* 102 *N.J.* at 285, 508 *A.*2d 167 (O'Hern, J., concurring in part, dissenting in part)). For example, during Cassady's cross-examination of the bank teller, she testified that "I didn't have to hand my money to him[;] ... he himself took the money from my window." She further testified about her interaction with Cassady and her perspective of his actual goal:

[DEFENSE COUNSEL:] But you said that my client didn't touch you in any way, did he?

[TELLER:] He didn't touch me.

[DEFENSE COUNSEL:] And he didn't physically threaten to do you any harm in any way, did he?

[TELLER:] Nothing.

[DEFENSE COUNSEL:] All his actions were directed towards the money?

[TELLER:] Towards the money, but when he jumped I got scared.

The other bank employees' testimony corroborated the teller's account, *ante* at 170 n.1, 966 *A.*2d at 475–76, and supported the notion that Cassady's purpose was singular—to get the money:

[DEFENSE COUNSEL:] And you heard what the person was saying to [the teller] at the bank, and that person never threatened [her], did he?

[WITNESS:] No.

[DEFENSE COUNSEL:] No, and everything was directed towards, Give me the money or, Let me have the money, and that's what he did, he jumped over[,] grabbed the money, jumped back over and left, correct?

[WITNESS:] (Nodding in the affirmative.)

[DEFENSE COUNSEL:] In fact he never touched anybody or threatened anybody?

[WITNESS:] (Shaking head in the negative.) Sorry. No.

. . . .

[DEFENSE COUNSEL:] But he never made any threatening statements, did he?

[WITNESS]: No.

[DEFENSE COUNSEL:] Never made any threatening actions, did he?

[WITNESS:] No.

[DEFENSE COUNSEL:] Just jumped over, grabbed the money, and jumped back over and left?

[WITNESS:] Yes.

According to another employee, once over the glass partition, Cassady never directed any action or attention to any teller staffing other available cash drawers:

[DEFENSE COUNSEL:] Now, at this point he climbs up over?

[WITNESS:] Yes.

[DEFENSE COUNSEL:] And he's down there in the work area?

[WITNESS:] Yes.

[DEFENSE COUNSEL:] What happens then?

[WITNESS:] He proceeds to go into the teller's drawer and then he climbed back over.

. . . .

[DEFENSE COUNSEL:] So everything was directed on ... the money, is that true, and not on [the teller], but the money that is in the teller's box or something[?]

[WITNESS:] Yes, sir.

Thus, whether Cassady's conduct constituted bank "robbery," as it is defined in *N.J.S.A.* 2C:15–1(a)(2), is not as "'plain and simple'" as the majority suggests. *Ante* at 179, 966 *A.2d* at 479 (quoting *State v. Cassady,* 396 *N.J.Super.* 392, 405, 934 *A.2d* 644 (App.Div.2007) (Fuentes, J., dissenting)). To the contrary, and mindful that it is the mere "existence," not the "worth," of facts supporting a lesser-included-offense charge that matters, the foregoing excerpts signify Cassady's satisfaction of the minimal evidentiary requirements of *N.J.S.A.* 2C:1–8(e). *Samuels, supra,* 189 *N.J.* at 251, 914 *A.2d* 1250. The facts detailing Cassady's *actions* may well be "clear and unequivocal," *ante* at 178, 966 *A.2d* at 481, but they hardly preclude a debate among rational minds regarding his *purpose.*

Despite that evidence, the judge instructed the jury without any mention that, if it believed that Cassady did not act with the

purpose to put the teller "in fear of immediate bodily injury," it could still convict him of theft. *N.J.S.A.* 2C:15–1(a)(2). In my view, that was error. Like the majority, the judge failed to look at the considerable evidence in Cassady's favor regarding his "purpose" in vaulting the window, and thus improperly applied *N.J.S.A.* 2C:1–8(e) to the facts established at trial. *See Brent, supra,* 137 *N.J.* at 117, 644 *A.*2d 583; *see also State v. Jordan,* 240 *N.J.Super.* 115, 118–19, 572 *A.*2d 676 (App.Div.) ("[W]here the evidence provides a rational basis upon which the defendant may be found guilty of an included offense and not guilty of the encompassing offense, it is reversible error for the court to refuse, upon request, to charge the jury with respect to the included offense." (citing *Mauricio, supra,* 117 *N.J.* at 417–18, 568 *A.*2d 879)), *certif. denied,* 122 *N.J.* 328, 585 *A.*2d 345 (1990).

Failure to charge a legitimate lesser-included offense suffers from an additional infirmity. It presents the jury with a proverbial Hobson's choice. "Unless a jury is told that it can convict the defendant of lesser[-]included offenses, it may be tempted to find [the] defendant guilty of a crime he or she did not commit simply because it prefers to convict on *some* crime rather than no crime at all." *State v. Short,* 131 *N.J.* 47, 54, 618 *A.*2d. 316 (1993); *see also* Catherine L. Carpenter, *The All–or–Nothing Doctrine in Criminal Cases: Independent Trial Strategy or Gamesmanship Gone Awry?,* 26 *Am. J.Crim. L.* 257, 300 (1999) ("However well-intentioned the [defendant's] trial strategy [ (not seeking the lesser charge) ], the failure to instruct on a provable lesser-included offense always subjects the defendant to the risk of an unwarranted conviction.").

Here, given the compelling video evidence establishing that Cassady committed some crime, the jury was faced with an " 'all-or-nothing' predicament[ ]": without the choice of theft, it could only convict Cassady of robbery, or acquit him entirely. *Short, supra,* 131 *N.J.* at 54, 618 *A.*2d 316 (quoting *State v. Muniz,* 118 *N.J.* 319, 332, 571 *A.*2d 948 (1990)). He was thus improperly subjected to the risk of an unwarranted conviction.

For those reasons, and for the reasons expressed in Judge Grall's thorough and thoughtful opinion, I would affirm the Appellate Division's reversal of Cassady's conviction.

Justices ALBIN and WALLACE join in this opinion.

*For affirmance in part/reversal in part/reinstatement*—Chief Justice RABNER and Justices LaVECCHIA, RIVERA–SOTO and HOENS—4.

*For affirmance*—Justices LONG, ALBIN and WALLACE—3.