<div style="border:1px solid">

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

</div>

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0628-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JOSEPH E. CELAURO,

    Defendant-Appellant.

_____

> Submitted March 22, 2021 – Decided December 23, 2021
>
> Before Judges Messano and Smith.
>
> On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 18-10-1811.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Elizabeth C. Jarit, Deputy Public Defender, of counsel and on the briefs).
>
> Bradley D. Billhimer, Ocean County Prosecutor, attorney for respondent (William K. Meighan, Supervising Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

SMITH, J.A.D.

After a jury trial, defendant Joseph Celauro was convicted of third-degree theft, N.J.S.A. 2C:20-3(a), and third-degree dealing in stolen property, N.J.S.A. 2C:20-7.1(b). He was sentenced to two concurrent four-year terms of incarceration. Defendant appealed, contending among other things that the trial court failed to instruct the jury on certain statutory defenses and that the court failed to consider certain mitigating factors at sentencing. We affirm for the reasons set forth below.

In October 2016, defendant worked for Robert Schuster, who owned a poultry business. Defendant also rented property from Schuster in Lakewood, which included a house and a detached garage. During this time, defendant and Schuster were dating sisters, Tiffany and Ashley Aguirre.

Schuster decided to purchase a vintage Harley-Davidson motorcycle from the estate of a former business associate, Jack Aviv. Schuster offered the estate $5,500 cash to purchase the motorcycle, which was accepted on October 14, 2016. A few days later, defendant drove Schuster and Schuster's girlfriend, Ashley, to the Aviv residence to pick up the motorcycle. Jack Aviv's widow, Florence Aviv, signed the title as the seller, but Schuster did not sign the title as the buyer. He wanted the title to show only Florence Aviv's name because he

2

intended to use the motorcycle as an investment. Additionally, Schuster never registered the motorcycle with the New Jersey Motor Vehicle Commission. He placed the title in the trunk of the motorcycle and, with Ashley as passenger, drove the motorcycle to the garage at the rental property. Defendant, still Schuster's tenant, followed behind in the car. Schuster never rode the bike again, nor did he give permission to defendant to ride or sell the motorcycle. Defendant did not give any money to Schuster to help pay for the purchase of the motorcycle.

In early January 2018 defendant quit working for Schuster, and their friendship ended. However, defendant continued to rent and reside at Schuster's Lakewood property. In April 2018, defendant sold the motorcycle to Jeffrey Aguirre, a friend of the defendant's for approximately ten years.[1] Aguirre went to the garage to inspect the motorcycle more than once, and he noted defendant used a key to unlock the garage on at least one occasion. Defendant sold the motorcycle to Aguirre for $3,500. Aguirre gave him $2,000 and promised to pay off the remaining balance at a later time. On April 17, 2018, defendant and Aguirre went together to transfer the title, register the motorcycle, and obtain

---

[1] The record shows that Ashley and Tiffany Aguirre, Schuster's and defendant's girlfriends respectively, are nieces of Jeffrey Aguirre.

A-0628-19

license plates. Aguirre then took possession of the motorcycle and drove it part of the way home. When it broke down on the way, Aguirre had it towed for repairs.

On July 16, 2018, Schuster went to the garage and discovered that the motorcycle was missing. He called the police, and Officer Michael Mooney of the Lakewood Police Department responded. Officer Mooney spoke to defendant, who denied seeing the motorcycle or knowing anything about it, and also told the officer that he did not have access to the garage. The defendant provided the officer two key rings with several keys on them. Officer Mooney tested the keys and was unable to unlock the garage door. Mooney also observed that there were no signs of forced entry into the garage. Officer Kevin Martin checked the vehicle identification number of the motorcycle and discovered that it was registered to Jeffrey Aguirre. The chain of title showed two owners, Jack Aviv and Jeffrey Aguirre. Aguirre turned over the license plates, registration, and title to Officer Martin. Officer Martin directed Schuster to retrieve the motorcycle, however, the officer retained possession of the title, registration, and plates.

Afterwards, an angry Aguirre confronted the defendant about the sale. Defendant assured Aguirre that the motorcycle was his to sell. He also explained

 A-0628-19

to Aguirre the reason that he held the motorcycle and its title was that Schuster owed him money.

Defendant was charged with third-degree theft, N.J.S.A. 2C:20-3(a), and third-degree dealing in stolen property, N.J.S.A. 2C:20-7.1(b). The case was tried in less than one day, and at the conclusion of testimony, the trial court sent the jury home and conducted a charge conference, which was inexplicably held off the record. The record shows that the trial court and counsel met in chambers for one hour, after which the court went back on record and supplied counsel with revised jury charges incorporating the agreed-upon changes. Once back on record, the trial court specifically asked counsel for any objections to the revised charge, and each counsel stated they had none. The next day the trial court instructed the jury, which returned a verdict of guilty on both counts.[2] After sentencing, this appeal followed.

Defendant raises the following issues on appeal:

> POINT I
>
> FAILURE TO CHARGE THE JURY ON MR. CELAURO'S DEFENSE DENIED HIM DUE PROCESS, A FAIR TRIAL, AND THE RIGHT TO

---

[2] In addition to finding defendant guilty on both counts, the jury answered a special interrogatory and found that the property in question was a motor vehicle.

PRESENT HIS DEFENSE TO A JURY. (Not Raised Below)[3]

POINT II

THE TRIAL COURT IMPROPERLY INSTRUCTED THE JURY FOREPERSON THAT SHE ONLY HAD TO COME BACK WITH A "ONE-WORD RE[S]PONSE" FOR THE VERDICT, REVEALING TO THE JURY ITS OPINION OF DEFENDANT'S GUILT AND DENYING DEFENDANT DUE PROCESS, A FAIR TRIAL, AND THE RIGHT TO AN IMPARTIAL JURY.

POINT III

THE CUMULATIVE IMPACT OF THE ERRORS DENIED MR. CELAURO DUE PROCESS, A FAIR TRIAL, AND THE RIGHT TO A TRIAL BY JURY.

POINT IV

THE TRIAL COURT ERRED IN REJECTING ALL MITIGATING FACTORS DESPITE SUBSTANTIAL MITIGATION EVIDENCE DEMONSTRATING MR. CELAURO'S GOOD CHARACTER, THE SIGNIFICANT ROLE HE SERVED AS A FATHER FIGURE TO HIS STEPCHILDREN, AND HIS COMPENSATION OF THE VICTIM, REQUIRING RESENTENCING.

Defendant first argues that the trial court's failure to charge the jury as to

N.J.S.A. 2C:20-7.1(d) was error. We disagree, and note defendant had ample

---

[3] Defendant's appellate brief suggests that there is ambiguity about whether Point I was raised before the trial court. The record is clear. It was not.

opportunity to object to the proposed charge <u>before</u> the case went to the jury. The record shows defendant offered no substantive objections, nor proposed any additional charges. The record further shows defendant offered no objection <u>after</u> the trial court charged the jury. Therefore, we review defendant's argument using the plain error standard. <u>See</u> <u>R.</u> 2:10-2. Under the standard, the trial court's decisions will not be disturbed unless defendant shows plain error that is "of such a nature as to have been clearly capable of producing an unjust result," or it is in the interest of justice to do so. <u>Ibid.</u>

N.J.S.A. 2C:20-7.1(b) reads in pertinent part as follows:

b.

(1) Dealing in stolen property. A person is guilty of dealing in stolen property if he traffics in, or initiates, organizes, plans, finances, directs, manages or supervises trafficking in stolen property.

N.J.S.A. 2C:20-7.1(d) reads as follows:

d. It is an affirmative defense to a prosecution under this section that the actor:

(1) Was unaware that the property or service was that of another;

(2) Acted under an honest claim of right to the property or service involved or that he had a right to acquire or dispose of it as he did.

The record leads us to conclude that the N.J.S.A. 2C:20-7.1(d) defenses would have been unavailable to defendant had he raised them. Defendant was well aware that Schuster paid Aviv's estate $5,500 for the motorcycle because he drove Schuster to the Aviv home to pay for and pick up the motorcycle. Aguirre testified that defendant told him that Schuster owed defendant money, implying that such debt gave defendant authority to sell the motorcycle. These facts undermine any claim from defendant that he was "unaware" of Schuster's claim to the motorcycle or that he had "an honest claim of right" to dispose of the motorcycle. Consequently, we find no applicability of the N.J.S.A. 2C:20-7.1(d) defenses, and we discern no error "clearly capable of producing an unjust result" flowing from the absence of jury instructions on this point. The "high bar" set for reversal under the plain error standard has not been vaulted. State v. Garcia, 245 N.J. 412, 437 (2021).

Defendant next argues the trial court committed error while instructing the jury foreperson. In preparing the jury for deliberations, the trial court told juror number one, the foreperson, that she would preside over the deliberations and then "tell [the court] when the verdict is reached." The court next told the foreperson, "we [will] read the question to you and [you] just read the answer. All right?" The trial court then noticed the foreperson had an "awkward"

expression. In response to this observation, the trial court attempted to simplify its instructions by stating, "[s]o it's a one-word response and I'm sure you're . . . capable of handling it; okay?" Defendant's position is that the trial court improperly influenced the jury because "guilty" is one word, while "not guilty" contains two words. Stated differently, the trial court either intentionally or inadvertently conveyed its opinion to the jury that defendant was guilty, and by doing so, exerted a coercive influence that intruded upon the deliberative process. State v. Adim, 410 N.J. Super. 410, 427 (App. Div. 2009).

That case is distinguishable from the record before us. In Adim, the jury was deadlocked after protracted deliberations where the jury had announced in a note to the court that no further deliberations would be helpful. Id. at 420. The trial judge in Adim then provided the deadlocked jury an "abbreviated" summary of the witnesses and the evidence in the case, concluding with the phrase, "that's it . . . that's the evidence." Id. at 427. The jury returned a verdict of guilty shortly thereafter. Id. at 422.

The record before us is less complex that the record we reviewed in Adim. It shows the trial court gave standard instructions to the jury on the deliberative process. While the court digressed to remedy what it perceived to be "awkwardness" or confusion on the part of the foreperson, it is undisputed that

it gave the complete model charge on deliberations.  The fulsome charge cured any defect caused by the trial court's attempt to reassure the foreperson.  There is no plain error here.

Defendant argues that the trial court erred in rejecting mitigating factors six and eleven in its aggravating and mitigating factor analysis at sentencing.  After reviewing the parties' arguments at sentencing, including voluminous submissions from defendant's friends and family, the trial court made findings and concluded that the aggravating factors outweighed the non-existent mitigating factors, imposing a term of imprisonment on each count.  "In the end, the fundamental principle is that an appellate court should not second-guess a trial court's finding of sufficient facts to support an aggravating or mitigating factor if that finding is supported by substantial evidence in the record."  State v. Cassady, 198 N.J. 165, 180-81 (2009) (internal quotations omitted).

We note there is competent, credible evidence in the record to support the trial court's findings, and we see no basis to substitute our judgment for that of the trial court.  We do not find that defendant's sentence "shocks the judicial conscience."  Id. at 184.  Any arguments not addressed here are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(E)(2).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0628-19